John Y. Bonds, III
State Bar I.D. No. 02589100
Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-34054 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § | (Chapter 11) |
| | § | |
| Debtor-Plaintiff | § | Adversary No. 21-03003-sgj |
| v. | § | |
| | § | Civil Case No. 3:21-CV-01010-E |
| JAMES D. DONDERO, | § | |
| | § | |
| Defendant. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | |
| | § | |
| JAMES D. DONDERO, | § | |
| | § | |
| Defendant. | § | |

# LIMITED OBJECTION OF JAMES DONDERO TO REPORT AND RECOMMENDATION TO DISTRICT COURT ON THE MOTION TO WITHDRAW THE REFERENCE

CORE/3522697.0002/168217874

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................................1

II.  BACKGROUND ..................................................................................................................1

III. ARGUMENT ........................................................................................................................4

   A. Judicial Economy Favors Immediate Withdrawal of the Entire Adversary Proceeding Because of the Certainty of Dispositive Motion Practice Combined with the Right to a Jury Trial. .................................................................................................................. 4

   B. The Appearance of Impropriety Dictates the Immediate Withdrawal of the Reference . 6

   C. Mr. Dondero Has Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Tax Law That Has Wide-Ranging Implications, Which Requires Mandatory Withdrawal. ..................................................................................... 9

IV. CONCLUSION...................................................................................................................11

CORE/3522697.0002/168217874

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clinton v. Pilgrim's Pride Corp. (In re Pilgrim's Pride Corp.)*,
 2009 Bankr. LEXIS 2291 (Bankr. N.D. Tex. Aug. 12, 2009) .................................................. 9

*Cooley v. Foti*,
 No. CIV.A. 86-3704, 1988 WL 10166 (E.D. La. Feb. 5, 1988) ............................................... 6

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
 No. BR 15-3229, 2016 WL 406959 (S.D. Tex. Feb. 3, 2016) .................................................. 5

*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
 455 B.R. 869 (E.D. La. 2011) .................................................................................................. 4

*In re Mirant Corp. v. S. Co.*,
 337 B.R. 107 (N.D. Tex. 2006) ................................................................................................ 5

*Salloum v. Comm'r of Internal Revenue*,
 113 T.C.M. (CCH) 1563 (T.C. 2017) .................................................................................... 10

**Rules and Statutes**

11 U.S.C. § 542(b) .................................................................................................................. 2, 3

28 U.S.C. § 157(c)(1) .................................................................................................................. 4

28 U.S.C. § 157(d) ...................................................................................................................... 3

28 U.S.C. § 157(e) ...................................................................................................................... 3

Fed. R. .Bankr. P. 5011 .............................................................................................................. 3

Defendant James Dondero ("Mr. Dondero") submits this limited objection to the Bankruptcy Court's *Report and Recommendation to District Court Proposing That It: (A) Grant Defendant's Motion to Withdraw the Reference at Such Time as Bankruptcy Court Certifies that Action is Trial Ready; and (B) Defer Pretrial Matters to Bankruptcy Court* ("Report and Recommendation") [District Court Dkt. No. 2-1] which was transmitted to this Court on July 7, 2021. In support of this limited objection, Mr. Dondero states the following:

## I.   INTRODUCTION

Mr. Dondero objects to the portions of the Report and Recommendation that (1) recommend retaining the adversary case until it is certified trial ready and (2) reject Mr. Dondero's assertion that withdrawal of the reference is mandatory. For the reasons described below, withdrawal is mandatory and there are reasons of efficiency and the avoidance of the appearance of impropriety that the District Court should withdraw the reference immediately and for all purposes.

## II.   BACKGROUND

1. On October 16, 2019, Debtor filed bankruptcy in Delaware. Debtor's creditors, including Acis Capital Management, L.P. (a debtor in a previous bankruptcy case before the Bankruptcy Court involving Mr. Dondero (the "Acis Bankruptcy")), moved to transfer this bankruptcy case to the Northern District of Texas seeking to have it assigned to the Bankruptcy Court. During the hearing, Debtor's current counsel, Jeffrey Pomerantz, acknowledged that a "fresh start" in the Delaware Bankruptcy Court was needed because the Bankruptcy Court in the Northern District of Texas had pre-existing, negative views of Debtor's management, including Mr. Dondero as a result of the Acis Bankruptcy.[1] Nonetheless, on December 4, 2019, the Delaware Bankruptcy

---

[1] *See* December 2, 2019 Transcript - Motion to Transfer, at 78:21-23, a true and correct copy of which is attached to the accompanying Declaration of Michael P. Aigen in Support of Limited Objection of James Dondero to Report and

Court transferred the case to the Northern District of Texas where it was assigned to Judge Jernigan, who presided over the Acis Bankruptcy.[2] *See* Bankr. Dkt. No. 1.

2. On January 22, 2021, Debtor commenced Adversary Proceeding No. 21-03003-sgj against Mr. Dondero, asserting a state law, non-core breach of contract claim ("Count I") and an entirely dependent turnover claim under 11 U.S.C. § 542(b) for the amounts allegedly owed on the Notes ("Count II"). Mr. Dondero denied consent to the Bankruptcy Court entering a final order or judgment, and demanded a jury trial in the District Court. [Dkt. No. 6, ¶¶ 3-5, 44, 45; Dkt. No. 16, ¶¶ 3-5, 46, 47].[3]

3. On March 18, 2021, Mr. Dondero filed his Motion to Recuse Bankruptcy Judge Jernigan, together with a supporting 37-page Brief and supplemental materials (consisting of 2,722 pages) ("Motion to Recuse") [Bankr. Dkt. Nos. 2060-2062]. Five days later, without holding a hearing, the Bankruptcy Court entered the *Order Denying Motion to Recuse Pursuant to 28 U.S.C. § 455* [Bankr. Dkt. No. 2083].

4. On April 15, 2021, Mr. Dondero filed his *Motion and Memorandum of Law in Support to Withdraw the Reference* ("Motion") [Dkt. No. 21] asserting that the District Court should hear and determine the matter, including all pretrial proceedings because (i) the Adversary Complaint is subject to mandatory withdrawal given the need to evaluate federal tax law and the

---

Recommendation to District Court ("Aigen Declaration") (App. 1-4) as Exhibit 1 (App. 8). *Id.* at 77:18-22. (App. 7) "[T]he committee and Acis are really being disingenuous, and they have not told you the real reason that they want the case before Judge Jernigan. . . .It is because she formed negative views regarding certain members of the debtor's management that the committee and Acis hope will carry over to this case." *Id.* at 78:5-8. (App. 8).

[2] *Id.* at 90:15-24 (App. 10). In fact, Mr. Pomerantz specifically referred to the Bankruptcy Court's opinions of Mr. Dondero as "baggage." *Id.* at 79:14-20 (App. 9).

[3] Mr. Dondero had initially filed certain proofs of claim, however, the Bankruptcy Court ordered the withdrawal with prejudice of Proofs of Claim Nos. 138 and 188 [Bankr. Dkt. No. 1510] before the adversary proceeding was filed, negating any bearing those claims have on this dispute. In its Report and Recommendation, the Bankruptcy Court agreed: "By withdrawing his proof of claim related to the Notes, Dondero-Defendant withdrew the claim from the claims allowance process of the Bankruptcy Court and preserved his right to a jury trial on the Notes." *See* District Court Dkt. No. 2-1 at 4 (collecting cases).

consequences such a ruling would have on interstate commerce, and (ii) there is good cause for permissive withdrawal.  Mr. Dondero also filed his *Motion to Stay Pending the Motion to Withdraw the Reference of Plaintiff's Complaint* [Dkt. No. 22] pursuant to 28 U.S.C. §§ 157(d) and (e), and Federal Rule of Bankruptcy Procedure 5011.  The Bankruptcy Court held a hearing on the Motion to Stay and granted the Motion in part, and, with certain exceptions, stayed the adversary proceeding until July 28, 2021 [Dkt. Nos. 52, 53].

5. On May 6, 2021, Debtor filed *Plaintiff's Opposition to Defendant's Motion to Withdraw the Reference* ("Response") [Dkt. No. 30] arguing there was no basis for mandatory withdrawal of the reference because no consideration of federal tax law matters will be necessary. The Response also asserted that the turnover action is inherently core, and, therefore, there was no cause shown for permissive withdrawal.  The Bankruptcy Court disagreed with Debtor with respect to permissive withdrawal stating:

> This court views the turnover claim as derivative of the breach of contract claims. The breach of contract claims are clearly non-core, and the bankruptcy court lacks constitutional authority to confer jurisdiction over them (absent consent—which does not exist here). A turnover action under 11 U.S.C. § 542(b) cannot be tacked onto a complaint so as to confer authority in the bankruptcy court to adjudicate an otherwise non-core claim.

District Court Dkt. No. 2-1 at 12. The Bankruptcy Court also rejected Mr. Dondero's contention that mandatory withdrawal of the reference was implicated stating:

> The bankruptcy court routinely considers tax law issues and, here, Dondero-Defendant has provided no meaningful explanation of the alleged materiality, complexity, and relevance of federal tax issues to the Adversary Proceeding. No relevant portions of the tax laws that will allegedly be implicated are cited, nor is there any explanation of how the issues are beyond the expertise of the bankruptcy court. Thus, Dondero-Defendant has failed to meet his burden to demonstrate that mandatory withdrawal of the reference is appropriate.

6. On June 28, 2021, Mr. Dondero (joined by Appellants Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The

Get Good Trust, and NexPoint Real Estate Partners, LLC) appealed to the District Court from the final order entered by Judge Jernigan denying Mr. Dondero's motion to recuse ("Appeal"), arguing that the Bankruptcy Court abused its discretion in denying the Motion to Recuse.  *See* Case 3:21-cv-00879-K at Dkt. No. 16.  The appeal is pending before this Court.

7.  On July 7, 2021, the Bankruptcy Court issued its Report and Recommendation, recommending that all pre-trial matters remain in the Bankruptcy Court, including the resolution (by recommendation and report) of any dispositive motions, with withdrawal of the reference to occur only if and when the adversary case were certified trial-ready.  District Court Dkt. No. 2-1 at 15.

### III.  ARGUMENT

**A.  Judicial Economy Favors Immediate Withdrawal of the Entire Adversary Proceeding Because of the Certainty of Dispositive Motion Practice Combined with the Right to a Jury Trial.**

8.  Here, the Bankruptcy Court lacks jurisdiction to rule on a dispositive motion such as a motion to dismiss or a motion for summary judgment.  Thus, any ruling by the Bankruptcy Court on any such motion will result only in proposed findings and conclusions, reviewable *de novo* in this Court.  *See* 28 U.S.C. § 157(c)(1).  Because this is a case in which it is virtually certain that there will be dispositive motion practice,[4] considerations of efficiency weigh in favor of withdrawing the reference early to enable the district court to hear the dispositive motion.  *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 877 (E.D. La. 2011) ("Given the need for a jury trial in this case, it would be inefficient to allow pretrial motion practice to continue in the bankruptcy court, delaying the eventual referral of claims to this Court for resolution at trial.").

---

[4] The Debtor has repeatedly stated it was going to move for summary judgment.  *See e.g.*, May 20, 2021 Transcript at 23:19-20, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 2 (App. 17).

9. Numerous courts within the Fifth Circuit, including this Court, have held that judicial economy favors immediate withdrawal of the reference where, as here, a bankruptcy court cannot enter final orders or judgments on dispositive motions, and instead can only issue proposed findings of fact and conclusions of law. *See, e.g., In re Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("Judicial economy will not be sacrificed by the withdrawal. Rather, adjudicating all of the claims, both core and non-core, in the district court eliminates the prospect of an appeal from the bankruptcy judge's adjudications of core claims, and dispenses with the need for the district court to conduct a de novo review of proposed findings and conclusions of the bankruptcy judge after a trial in the bankruptcy court as to non-core claims. And, for the same reasons, withdrawal of the reference will foster the economical use of the resources of the litigants."); *see also Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959, at *4 (S.D. Tex. Feb. 3, 2016) (overruling bankruptcy court's report and recommendation to maintain the proceeding in the bankruptcy court for pretrial matters and instead ordering immediate withdrawal of the reference).

10. Withdrawing the reference now promotes judicial economy, as it will enable the District Court to have the familiarity necessary to make key trial determinations on the more complex evidentiary and expert issues that arise in a jury trial. Moreover, because Debtor has indicated an intent to file a motion for summary judgment and the Bankruptcy Court can only recommend a resolution and the District Court will be required to decide such a motion *de novo* in any event, it will be more efficient for the District Court to preside over this case as soon as possible.

**B.      The Appearance of Impropriety Dictates the Immediate Withdrawal of the Reference.**

11.    Withdrawing the reference immediately will also ameliorate any appearance of impropriety arising out of the Bankruptcy Court making pre-trial rulings, including a dispositive motion concerning millions of dollars in disputed obligations involving a party who is appealing that same Bankruptcy Court's denial of a recusal motion. *Cooley v. Foti*, No. CIV.A. 86-3704, 1988 WL 10166, at *5 (E.D. La. Feb. 5, 1988) (finding the magistrate judge's personal "bias constitutes extraordinary circumstances and justifies the withdrawal of the [analogous] § 636[] references"). For example, in *Cooley,* the District Court, in making its determination that there was sufficient reasons to justify vacating a reference to a magistrate judge based on the "possibility of bias or prejudice," found that the "magistrate evidenced a degree of anger so pervasive as to amount to personal bias, even though it had its origin in litigation before the magistrate. *Id.* at **5-6.  The evidence of bias in that case included, among other things, *sua sponte* actions by the magistrate requiring the requesting party to show cause why he should not be sanctioned for filing answers and defenses that did not "fairly meet the substance of the averments denied." *Id.* at 3.  The actions in this case similarly demonstrate, at a minimum, a possibility of bias or prejudice.

12.    For example, as detailed in the Appellate Brief filed in the District Court,[5] Mr. Dondero contends the Bankruptcy Court entered the Highland bankruptcy case with negative opinions of Mr. Dondero and this predisposition "manifested itself in actions that impaired Appellants' legal rights; favored Appellants' opponents; and created, at a minimum, the clear perception that the Bankruptcy Court was unwilling to act impartially where Mr. Dondero and the

---

[5] Appellants' Brief (filed by James Dondero, Highland Capital Management Fund Advisors LP, NexPoint Advisors LP, NexPoint Real Estate Partners LLC, The Dugaboy Investment Trust, and The Get Good Trust) at p. 15 (citations omitted), Case No. 3:21-CV-00879-K [Appeal Dkt. No. 16], attached to the Aigen Declaration as Exhibit 3 (App. 40).

Affected Entities were concerned."  Specifically, among other things, the record reflects that the Bankruptcy Court has:

(a)     repeatedly made negative statements about Mr. Dondero and questioned Mr. Dondero's credibility before he ever testified; [6]

(b)     summarily disregarded the testimony of any witness favorable to Mr. Dondero (or any of the Appellants) as 'under [Mr. Dondero's] control' and *per se* not credible;[7]

(c)     repeatedly concluded, without evidence, that any entity the Bankruptcy Court deemed associated with Mr. Dondero was essentially an agent and no more than a pawn of Mr. Dondero;[8]

(d)     declared that Mr. Dondero and his 'controlled entities' are vexations litigants because: (i) they defended lawsuits and motions filed against them; and/or (ii) have asserted valid legal positions (including to preserve their and the Affected Entities' legal rights on appeal);[9]

---

[6] For example, on February 19, 2020, the Court held a hearing on Debtor's application to retain a law firm to, among other things, appeal an order against Neutra Ltd. ("Neutra") (a company owned by Mr. Dondero). While former Bankruptcy Judge Russell Nelms (one of the Debtor's independent directors) determined that engaging the firm to represent Neutra was in the Debtor's best interest, the Bankruptcy Court concluded, without evidence, that Debtor's fully independent board was being unduly influenced by Mr. Dondero.  At the same hearing, the Bankruptcy Court indicated that it believed Mr. Dondero lacked credibility even though, at that point in time, Mr. Dondero had not yet testified. *See* February 19, 2020 Transcript at 38:22-39:17; 62:6-17; 174:22-175:1; 177:7-178:3; a true and correct copy of which is attached to the Aigen Declaration as Exhibit 4 (App. 57-63).

[7] *See, e.g.,* February 22, 2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief [Bankr. Dkt. No. 1943] at p. 19 ("At the Confirmation Hearing, Mr. Post testified on behalf of the Highland Advisors and Funds that the Funds have independent board members that run the Funds, but the Bankruptcy Court was not convinced of their independence from Mr. Dondero merely because none of the so-called independent board members have ever testified before the Bankruptcy Court and all have been engaged with the Highland complex for many years. Notably, the Court questions Mr. Post's credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request, and he is currently employed by Mr. Dondero."); *see also* January 8, 2021 Transcript, at 175:8-176:25, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 5 (App. 68-69).

[8]  February 8, 2021 Transcript at 13:17-24; 20:18-20; 21:18-22:3, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 6 (App. 74-77).

[9] February 8, 2021 Transcript at 46:20-25 (App. 78).

(e) issued a *sua sponte* order demanding that so-called 'Dondero-Affiliated Entities' disclose their ownership and control, including entities that have not appeared or filed anything in the Highland Bankruptcy;[10] and

(f) applied more favorable standards and rules to Debtor than those it afforded to Appellants."[11]

13. Moreover, the Debtor is amending its adversary complaint in this case to add additional fraudulent transfer claims against Mr. Dondero personally **that the Bankruptcy Court itself has suggested the Debtor bring**.[12] Resolving the adversary complaint will entail, among other things, prove of oral agreements to which Mr. Dondero was a party, determinations about the adequacy of Mr. Dondero's compensation, an examination of whether the potential compensation via loan forgiveness was properly structured for IRS purposes and the value of Mr. Dondero's performance at the Debtor. Given the Bankruptcy Court's prior pronouncements about Mr. Dondero, coupled with the Bankruptcy Court's own suggestion that the Debtor amend its claims to include fraud, having another court – this Court – preside over the claims that will inevitably turn on credibility determinations will avoid the appearance of impropriety.

---

[10] June 17, 2021 Order at p. 1 ("This Order is issued by the court sua sponte pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above-referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case.").

[11] Appellants' Brief (filed by James Dondero, Highland Capital Management Fund Advisors LP, NexPoint Advisors LP, NexPoint Real Estate Partners LLC, The Dugaboy Investment Trust, and The Get Good Trust) at p. 15 (citations omitted), Case No. 3:21-CV-00879-K [Appeal Dkt. No. 16], attached to the Aigen Declaration as Exhibit 3 (App. 40).

[12] Appellants' Brief at 24-25 [Appeal Dkt. No. 16] (App. 49-50); June 10, 2021 Transcript at 81:5-16; 83:1-12, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 7 (App. 84-85); May 20, 2021 Transcript at 12:23–13:6, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 2 (App. 15-16). Not coincidentally, these are the exact claims that Debtor is now amending its complaint to seek to bring against Mr. Dondero and the other defendants based on the Bankruptcy Court's suggestion to Debtor's counsel. A true and correct copy of the proposed Amended Complaint is attached to the Aigen Declaration as Exhibit 8 (App. 87-108).

**C.   Mr. Dondero Has Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Tax Law That Has Wide-Ranging Implications, Which Requires Mandatory Withdrawal.**

14.   The likelihood of motion practice makes the need for mandatory withdrawal stronger.  For example, in *Clinton v. Pilgrim's Pride Corp. (In re Pilgrim's Pride Corp.)*, the Bankruptcy Court recommended immediate withdrawal of the reference with respect to all proceedings because the disposition of a motion for summary judgment required the court's interpretation of a certain federal statute.  Nos. 08-45664-DML, 4:09-CV-00386-Y, 09-04222-DML, 2009 Bankr. LEXIS 2291, at *6 (Bankr. N.D. Tex. Aug. 12, 2009) (holding "I further recommend that withdrawal of the reference be immediate and with respect to all proceedings in the Adversary. Disposition of the MTD is likely to require interpretation of the PSA -- as will any other dispositive motions.").  Similarly, here, the District Court will be determining dispositive motions that involve federal tax statues.

15.   Mr. Dondero's principal defense in the Adversary Proceeding is that the Notes were modified by an agreement under which they would be forgiven as compensation if certain achievements were met. Debtor argues that the face of the Notes indicates they are due.[13]  To reconcile any optical confusion between the four corners of the Notes, and the subsequent agreement rendering the Notes forgivable is rooted in tax law.  For example, as discussed below, the issue of whether it is credible that the subsequent agreement under which the loans were to be forgiven on the occurrence of certain conditions subsequent needs to be put in context with how loan-based deferred compensation is structured to be compliant with applicable tax law, including Internal Revenue Code sec. 61(a)(11).[14]

---

[13] Debtor Resp. ¶ 19 [Case 21-03003, Dkt. No. 30].
[14] Expert Report of Bruce A. McGovern, attached to the Aigen Declaration as Exhibit 9 (App. 109-122).

16.     The Report and Recommendation comments that Mr. Dondero "has provided no meaningful explanation of the alleged materiality, complexity, and relevance of federal tax issues to the Adversary Proceeding" and that "no relevant portions of the tax laws that will allegedly be implicated are cited, nor is there any explanation of how the issues are beyond the expertise of the bankruptcy court."

17.     To clarify, Mr. Dondero is not questioning the competency of the Bankruptcy Court to handle routine tax matters. On these claims, however, the fact-finder will ultimately need to hear fact and expert testimony about how loans are used as a deferred compensation device and how those devices are structured.  Such analysis requires the Court to determine the particulars and nuances of the Notes, the circumstances and testimony regarding the creation of the Notes, testimony on the conditions subsequent and financial benchmarks resulting in the Notes becoming compensation, whether those conditions subsequent were met, how the funds from the Notes were ultimately treated, and by whom. *Salloum v. Comm'r of Internal Revenue*, 113 T.C.M. (CCH) 1563 (T.C. 2017).  Placing perceived roadblocks to the use of a compensation method that is common in the financial services industry would have an adverse impact on competition for top level professionals in the industry.[15]

18.     With regard to the tax issues, here, for example, one Note expressly states "[t]his Note is paid to the Maker to help satisfy any current tax obligations of a former partner or current partner."  Debtor's own monthly operating reports identified the balances due on all three notes as "DUE FROM OTHER – TAX LOANS" and "Partner Tax Loans."[16] Moreover, all three Notes reference the existence of other "existing or hereafter arising" related agreements (*e.g.*, Dkt. No.

---

[15] Expert Report of Alan M. Johnson, attached to the Aigen Declaration as Exhibit 10 (App. 123-149).
[16] James Dondero's Motion and Memorandum of Law in Support to Withdraw the Reference, filed on April 15, 2021, at 2 [Dkt. No 21].

1-1 ¶ 8) that Mr. Dondero will testify related to the conditions under which the loans would be forgiven. As an understanding of the complex tax requirements for a bona fide note that also has the capacity to be deferred compensation is needed to adjudicate this proceeding, the issues should be adjudicated by this Court so that the Court is familiar with the issues and nuances when making a final decision on the dispositive motions and at trial.

19.  There is no indication that these are the kind of tax matters that the bankruptcy court routinely hears. Indeed, Mr. Dondero has retained experts (the reports of which are annexed to the accompanying Declaration of Michael Aigen as Exhibits 9 and 10) that will address the tax-related matters because both the Court and fact-finder jurors would be aided by experts familiar with how loan-based deferred compensation is structured to be compliant with tax law. These opinions bear on whether it is credible that the subsequent agreement here -- under which the loans were to be forgiven on the occurrence of certain conditions subsequent -- was made, by explaining why one would make such an agreement. Rather than duplicate the effort of determining these issues, the parties and judicial economy are better served by immediate withdrawal of the reference.

## IV.   CONCLUSION

WHEREFORE, for the reasons above, Mr. Dondero respectfully requests that the District Court enter an order: (1) rejecting in part the Bankruptcy Court's Report and Recommendation by immediately withdrawing the reference of the entirety of the case; (2) staying the matter pending determination; and (3) granting such further relief as equity and justice requires.

Dated: July 21, 2021

Respectfully submitted,

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

 - and -

John Y. Bonds, III
State Bar I.D. No. 02589100
Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john@bondsellis.com
Email: clay@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that, on July 21, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for Debtor.

                                              */s/ Bryan C. Assink*
                                              Bryan C. Assink