PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adv. Proc. No. 21-03003-sgj |
| | § | |
| JAMES DONDERO, NANCY DONDERO, AND THE | § | |
| DUGABOY INVESTMENT TRUST, | § | |
| | § | Case No. 3:21-cv-01010-E |
| Defendants. | § | |
| | § | |
| | § | |

| | |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| | § |
| Plaintiff, | § Adv. Proc. No. 21-3004 |
| | § |
| vs. | § |
| | § |
| | § Case No. 3:21-cv-00881-X |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § |
| | § |
| | § |
| Defendant. | § |
| | § |

| | |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| | § |
| Plaintiff, | § Adv. Proc. No. 21-3005 |
| | § |
| vs. | § |
| | § |
| NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | § Case No. 3:21-cv-00880-C |
| | § |
| | § |
| | § |
| Defendants. | § |

| | |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| | § |
| Plaintiff, | § Adv. Proc. No. 21-3006 |
| | § |
| vs. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | § Case No. 3:21-cv-01378-N |
| | § |
| | § |
| | § |
| Defendants. | |

2

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 21-3007 |
| | § | |
| vs. | § | |
| | § | Case No. 3:21-cv-01379-X |
| HCRE PARTNERS, LLC (n/k/a NexPoint | § | |
| Real Estate Partners, LLC), JAMES | § | |
| DONDERO, NANCY DONDERO, AND | § | |
| THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| Defendants. | § | |

DOCS_NY:44559.13 36027/003

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.   RELEVANT BACKGROUND .............................................................................. 2

A. The Bankruptcy Case ...................................................................................... 2

B. The Notes Actions ............................................................................................ 4

C. The Obligors File Their Answers to the Complaints ....................................... 7

D. The Obligors Move to Withdraw the Reference ............................................. 9

E. Plaintiff Responds to the Alleged Agreement Defense by Adding the New Claims and Defendants and All Parties Agree to Consolidate the Cases for Discovery and Other Purposes ........................................................................................................... 10

F. All Defendants Participate in Coordinated Discovery and Related Matters ..................... 13

III.   ARGUMENT ..................................................................................................... 16

A. Legal Standard ................................................................................................ 16

    1.   The Court in Which the First Notes Action Was Filed Determines Whether to Consolidate Subsequently Filed Cases ................................................... 16

    2.   Trial Courts Have Broad Discretion to Consolidate Cases Involving Similar Parties, Facts, and Legal Issues ............................................................... 18

B. Consolidation of the Notes Actions Is Warranted .......................................... 20

IV.   CONCLUSION ................................................................................................... 24

## TABLE OF AUTHORITIES

**Page**

### CASES

*Boh Bros. Constr. Co., L.L.C. v. Cal. First Nat'l Bank*,
  CV 16-2699, 2016 WL 9404906 (E.D. La. June 1, 2016) ...................................... 17
*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ........................................................................ 17
*Cox v. Nueces County*,
  No. 2:12-CV-339, 2014 WL 12781296 (S.D. Tex. Dec. 10, 2014) ............................ 19, 22, 23
*Gentry v. Smith*,
  487 F.2d 571 (5th Cir. 1973) ................................................................... 18, 20
*Igloo Prods. Corp. v. Mounties, Inc.*,
  735 F. Supp. 214 (S.D. Tex. 1990) ................................................................ 17
*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
  549 F.2d 1006 (5th Cir. 1977) ..................................................................... 19
*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ...................................................................... 17
*Mayfield v. Am. Auto. Ins. Co.*,
  CIV.A. 502CV137, 2003 WL 21250935 (N.D. Tex. May 27, 2003) ..................... 19, 22, 23, 24
*Miller v. U.S. Postal Serv.*,
  729 F.2d 1033 (5th Cir. 1984) ................................................................. 19, 24
*Morrison v. Amway Corp.*,
  186 F.R.D. 401 (S.D. Tex. 1998) ............................................................. passim
*Poche v. Geo–Ram, Inc.*,
  No. 96–1437, 1996 WL 371679 (E.D. La. July 2, 1996) ........................................ 18
*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ................................................................. 17, 20
*Twin City Ins. Co. v. Key Energy Servs., Inc.*,
  No. H-09-0352, 2009 WL 1544255 (S.D. Tex. June 2, 2009) ................................... 17
*Wells Fargo Bank, N.A. v. West Coast Life Ins. Co.*,
  631 F. Supp. 2d 844 (N.D. Tex. 2009) ............................................................ 17
*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ...................................................................... 17
*Wharton v. U.S. Dept. of Housing and Urban Dev.*,
  No. 2:19-CV-300, 2020 WL 6749943 (S.D. Tex. March 3, 2020) ...................... 19, 20, 21, 23

### RULES

Fed. R. Civ. P. 26 ....................................................................................... 8
Fed. R. Civ. P. 30(b)(6) ..................................................................... 13, 14, 21
Fed. R. Civ. P. 42(a) ......................................................................... 2, 18, 19, 20

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO CONSOLIDATE NOTES ACTIONS**

Highland Capital Management, L.P., the reorganized debtor ("Highland" or "Plaintiff"),

hereby files this memorandum of law in support of its *Motion to Consolidate Notes Actions* (the

"Motion") requesting that this Court consolidate the five (5) above-captioned cases (collectively,

the "Adversary Proceedings" or the "Notes Actions") under Case No. 3:21-cv-1010, the first-

docketed Adversary Proceeding.[1]  In support of its Motion, Plaintiff states as follows:

## I.      PRELIMINARY STATEMENT[2]

1.      Consolidation of the Notes Actions before this Court is warranted.

2.      The Adversary Proceeding against Mr. Dondero was the "first-filed" and was

assigned to this Court after the Bankruptcy Court granted each of the Obligors' respective Motions

to Withdraw the reference.  As a result, under the "first-to-file" rule, this is the proper Court to

hear and determine the Motion to consolidate all five Notes Actions.  This Court should grant the

Motion.

3.      The Notes Actions arise from Defendants' respective defaults under certain Notes

in December 2020 in the aggregate total amount of over $50 million.  The Notes Actions involve

common issues of fact and law, including: (a) the Common Facts and Witnesses; (b) the form and

substance of each Note is virtually the same; (c) the claims against each Obligor are the same; (d)

the claims against each Duty Defendant are the same; and (e) the evidence Plaintiff will rely upon

---

[1]  Concurrently herewith, Highland is filing the *Appendix in Support of Highland Capital Management, L.P.'s Memorandum of Law in Support of Motion to Consolidate Notes Actions* (the "Appendix"). Citations to the Appendix are notated as follows: Ex. #, Appx. #

[2]  Capitalized terms in this Preliminary Statement shall have the meanings ascribed to them below.

to rebut the Obligors' primary defenses is substantially the same.  For this reason alone, consolidation of the Notes Actions is appropriate under Rule 42(a).

4.      Additional factors weighing in favor of consolidation include that: (i) the Notes Actions involve common parties, including the same Plaintiff (*i.e.*, Highland), and common Defendants (*i.e.*, Mr. Dondero and individuals or entities affiliated with or controlled by him); (ii) the Notes Actions were and are pending before the same Court; (iii) there is no meaningful risk of prejudice to Defendants arising from consolidation, and any such risk is far outweighed by the risk of inconsistent rulings in five separate proceedings involving virtually identical claims, issues, and parties; (iv) consolidation will conserve judicial resources because most of the facts, documents, witnesses, and issues of law are the same in each; (v) consolidation would prevent unnecessary costs and delays that would result from having the Notes Actions determined in five separate proceedings; and (vi) consolidation will avoid multiple appeals that are all but inevitable.

5.      This is the paradigm case for consolidation.  For the reasons set forth below, the Motion should be granted.

## II.      RELEVANT BACKGROUND

### A.      The Bankruptcy Case

6.      On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

7.      On December 4, 2019, the Delaware Court entered an order transferring venue of Highland's bankruptcy case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") [Bankr. Docket No. 186].[3] (Ex. 1, Appx. 1-3)

---

[3] "Bankr. Docket No. __" refers to the docket maintained by the Bankruptcy Court in case no. 19-34054.

8.      On January 22, 2021, Highland filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808] (Ex. 2, Appx. 4-70) (the "Plan").

9.      James Dondero ("Mr. Dondero"), a co-founder of Highland and its former Chief Executive Officer who was forced to surrender control of Highland shortly after the case was transferred to the Bankruptcy Court, vociferously opposed the Plan.  As a result, he and certain entities he directly or indirectly owned and/or controlled (including The Dugaboy Investment Trust ("Dugaboy"), Highland Capital Management Fund Advisors, L.P. ("HCMFA"), NexPoint Advisors, L.P. ("NexPoint"), and NexPoint Real Estate Partners LLC (f/k/a HCRE Partners LLC ("HCRE")) objected to the Plan (the "Plan Objections").[4]

10.     In early February 2021, the Bankruptcy Court held a two-day evidentiary hearing on Highland's Plan, after which it overruled the Plan Objections.  [*See* Bankr. Docket Nos. 1885 (Ex. 7, Appx. 174-175), 1905] (Ex. 8, Appx. 176-433).

11.     On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (Ex. 9, Appx. 434-595) (the "Confirmation Order") which confirmed Highland's Plan.[5]

12.     On August 11, 2021, the Plan became Effective (as defined in the Plan), and Highland became the Reorganized Debtor (as defined in the Plan).  *See Notice of Occurrence of*

---

[4] *See* Bankr. Docket Nos. 1661 (Ex. 3, Appx. 71-79), 1667 (Ex. 4, Appx. 80-114), 1670 (Ex. 5, Appx. 115-165), 1673 (Ex. 6, Appx. 166-173).  Few other Plan objections were filed, and all such objections were resolved prior to confirmation, leaving Mr. Dondero and his affiliated entities alone as objecting parties.

[5] The confirmed Plan included certain amendments filed on February 1, 2021.  *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Bankr. Docket No. 1875] (Ex. 10, Appx. 596-644).

3

*Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 2700] (Ex. 11, Appx. 645-649).

**B.** **The Notes Actions**

13.      Mr. Dondero and four of his affiliated entities are the makers under a series of promissory notes tendered to Highland in exchange for contemporaneous loans.  These notes were executed between 2013 and 2019 and are summarized as follows:

**Notes executed by Mr. Dondero (the "Dondero Notes"):**

- A promissory note in the original principal amount of $3,825,000, executed on February 2, 2018, payable on demand.

- A promissory note in the original principal amount of $2,500,000, executed on August 1, 2018, payable on demand.

- A promissory note in the original principal amount of $2,500,000, executed on August 13, 2018, payable on demand.

**Notes executed by HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) (the "HCRE Notes"):**

- A promissory note in the original principal amount of $100,000, executed on November 27, 2013, payable on demand.

- A promissory note in the original principal amount of $2,500,000, executed on October 12, 2017, payable on demand.

- A promissory note in the original principal amount of $750,000, executed on October 15, 2018, payable on demand.

- A promissory note in the original principal amount of $900,000, executed on September 25, 2019, payable on demand.

- A term note in the original principal amount of $6,059,831, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year (the "HCRE Term Note").

**Notes executed by Highland Capital Management Services, Inc. (the "HCMS Notes"):**

- A promissory note in the original principal amount of $150,000, executed on March 28, 2018, payable on demand.

4

- A promissory note in the original principal amount of $200,000, executed on June 25, 2018, payable on demand.

- A promissory note in the original principal amount of $400,000, executed on May 29, 2019, payable on demand.

- A promissory note in the original principal amount of $150,000, executed on June 26, 2019, payable on demand.

- A term note in the original principal amount of $20,247,628.02, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year (the "HCMS Term Note").

**Notes executed by Highland Capital Management Fund Advisors, L.P. (the "HCMFA Notes"):**

- A promissory note in the original principal amount of $2,400,000, executed on May 2, 2019, payable on demand.

- A promissory note in the original principal amount of $5,000,000, executed on May 3, 2019, payable on demand.

**Note executed by NexPoint Advisors, L.P. (the "NexPoint Note," and collectively with the Dondero Notes, the HCRE Notes, the HCMS Notes, and the HCMFA Notes, the "Notes"):**

- A term note in the original principal amount of $30,746,812.33, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year (the "NexPoint Term Note" and together with the HCRE Term Note and the HCMS Term Note, the "Term Notes").

14.     Other than the Term Notes, each of the Notes was (a) payable upon demand,[6] and (b) identical in form and substance except for the identity of the maker, the date of the Note, and the original principal amount of each demand Note.

15.     Each of the Term Notes (a) was executed on the same day, (b) "rolled up" previously issued demand notes, and (c) was identical in form and substance except for the identity of the maker, the original principal amount of the Term Note, and the identity of the demand notes subject to the "roll up."

---

[6] The Notes other than the Term Notes are collectively referred to as the "Demand Notes".

16.     Mr. Dondero directly or indirectly owned and/or controlled each of the corporate obligors under the Notes (*i.e.*, NexPoint, HCMFA, HCMS, and HCRE (collectively, the "Corporate Obligors," and together with Mr. Dondero, the "Obligors")) when each Note was executed, and he continues to directly or indirectly own and/or control each of the Corporate Obligors today.[7]

17.     Mr. Dondero also controlled Highland when each Note was executed, and he continued to control Highland as of the Petition Date and through January 9, 2020, when he surrendered control of Highland to an independent board in order to avoid the imposition of a court-appointed trustee.[8]

18.     In December 2020, just weeks before the confirmation hearing on Highland's Plan, the Obligors each defaulted under their respective Notes.  The aggregate amount of accrued but unpaid principal and interest due and owing to Plaintiff under the Notes exceeds $50 million.

19.     As a result, on January 22, 2021, Plaintiff commenced the Adversary Proceedings by filing a *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* (the "Original Complaints") against each of the Obligors.[9]

20.     Except for the information unique to each Note and the circumstances surrounding the breaches (depending solely on whether the Note in question was a Demand Note or a Term Note), the Original Complaints were virtually identical in form and substance.  In its Original

---

[7] *See e.g.*, Adv. Proc. No. 21-3010, Docket No. 25 ¶ 1 (finding that "[e]ach of the Advisors is controlled by Mr. Dondero") (Ex. 12, Appx. 653); May 28, 2021 deposition transcript of James Dondero at 228:6-229:4 (Mr. Dondero admitted that he controls all of the Obligors) (Ex. 13, Appx. 689).

[8] *See* Bankr. Docket Nos. 338 (Ex. 14, Appx. 719-727) and 339 (Ex. 15, Appx. 728-733).

[9] *See* Adv. Proc. No. 21-03003 (the "Dondero Action"), Docket No. 1 (Ex. 16, Appx. 734-758) (the "Dondero Original Complaint"); Adv. Proc. No. 21-03004 (the "HCFMA Action"), Docket No. 1 (Ex. 17, Appx. 759-779) (the "HCMFA Original Complaint"); Adv. Proc. No. 21-03005 (the "NexPoint Action"), Docket No. 1 (Ex. 18, Appx. 780-807) (the "NexPoint Original Complaint"); Adv. Proc. No. 21-03006 (the "HCMS Action"), Docket No. 1 (Ex.19, Appx. 808-819) (the "HCMS Original Complaint"); and Adv. Pro. No. 21-03007 (the "HCRE Action"), Docket No. 1 (Ex. 20, Appx. 820-857) (the "HCRE Original Complaint").  The forgoing Original Complaints are collectively referred to as the "Original Complaints."

6

Complaints, Plaintiff asserted claims against each Obligor for (i) breach of contract for the Obligor's breach of its respective obligations under the Notes, and (ii) turnover by each Obligor for all accrued and unpaid principal and interest due under the Notes until the date of payment, plus Plaintiff's cost of collection and reasonable attorney's fees (as expressly provided for under each of the Notes).

### C.     The Obligors File Their Answers to the Complaints

21.     In due course, each of the Obligors filed its respective Original Answer.[10]  In his Original Answer, Mr. Dondero asserted as his first affirmative defense that "Plaintiff's claims should be barred because it was previously agreed that Plaintiff would not collect on the Notes." Dondero Action, Docket No. 6 ¶ 40 (Ex. 21, Appx. 864) (hereinafter, referred to as the "Alleged Agreement").  None of the Corporate Obligors asserted the Alleged Agreement or any similar defense in its respective Original Answer.

22.     In late March, the Debtor served discovery asking Mr. Dondero to admit, among other things, that he did not pay taxes on the amounts loaned to him but that Plaintiff allegedly agreed not to collect.[11]  Having been alerted to a fatal flaw in his defense, Mr. Dondero modified his affirmative defense based on the Alleged Agreement to state that: "Plaintiff's claims should be barred because it was previously agreed that Plaintiff would not collect on the Notes *upon fulfillment of conditions subsequent*."  Dondero Action, Docket No. 16 (emphasis added) (Ex. 27, Appx. 911-919) (the "Amended Answer") ¶ 40.

---

[10] Dondero Action, Docket No. 6 (Ex. 21, Appx. 858-866) (the "Dondero Original Answer"); HCFMA Action, Docket No. 6 (Ex. 22, Appx. 867-874) (the "HCMFA Original Answer"); NexPoint Action, Docket No. 6 (Ex. 23, Appx. 875-883) (the "NexPoint Original Answer"); HCMS Action, Docket No. 6 (Ex. 24, Appx. 884-893) (the "HCMS Original Answer"); and HCRE Action, Docket No. 7 (Ex. 25, Appx. 894-903) (the "HCRE Original Answer").

[11] *Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s First Request for Admissions* (Responses 4, 8, and 12) (Ex. 26, Appx. 904-910).

23.     On April 15, 2021, about ten days after serving his Amended Answer, Mr. Dondero

served his *Rule 26 Initial Disclosures* (Ex. 28, Appx. 920-928) (the "Rule 26 Disclosures").  In his

Rule 26 Disclosures, Mr. Dondero specifically identified fifteen (15) "individuals likely to have

discoverable information," but his sister, Nancy Dondero ("Ms. Dondero"), was not among them.

24.     On April 26, 2021, Mr. Dondero served his sworn *Objections and Answers to

Highland Capital Management L.P.'s First Set of Interrogatories* (Ex. 29, Appx. 929-935) (the

"Responses to Interrogatories").

25.     In response to an interrogatory that required Mr. Dondero to identify, with respect

to each Note, "the person who entered into each [Alleged] Agreement on behalf of the Debtor,"

Mr. Dondero answered that "[t]he [Alleged] Agreements were entered into on behalf of the Debtor

by James Dondero subsequent to the time each note was executed."  *Id*. at 4 (Answer to

Interrogatory No. 1). (Ex. 29, Appx. 933)

26.     In response to an interrogatory that required Mr. Dondero to identify "every person

who James Dondero believes has actual knowledge of each [Alleged] Agreement," Mr. Dondero

identified five (5) individuals, including himself, but – like the Rule 26 Disclosures – Mr.

Dondero's sister was not among them.

27.     It was not until later in discovery that Mr. Dondero changed his story again, this

time to identify his sister – someone he failed to include as a person likely to have discoverable

information or someone he believed had actual knowledge of each Alleged Agreement – as the

person who allegedly bound Plaintiff to the Alleged Agreement, rather than himself.[12]

28.     In the weeks that followed, each of the Corporate Obligors (except for HCMFA)

amended its respective answer to adopt the same Alleged Agreement defense, contending that it is

---

[12] Ms. Dondero was allegedly acting in her capacity as the Trustee of Dugaboy, a family trust in which Mr. Dondero is the sole beneficiary during his lifetime and that purportedly held a majority of the interests in Highland.

8

not liable under any of the Notes because Plaintiff (bound by Ms. Dondero, acting as the Dugaboy Trustee) previously entered into an oral agreement pursuant to which it promised not to collect on the Notes "upon fulfillment of conditions subsequent."[13]

29.     HCMFA did not rely on the Alleged Agreement as an affirmative defense, and instead asserted that one of its officers, Frank Waterhouse (HCMFA's Treasurer), signed the HCMFA Notes by mistake and without authority ("HCMFA's Mistake Defense").[14]  As discussed further below, Plaintiff intends to offer much of the same documentary and testimonial evidence to prove that both the Alleged Agreement and HCMFA's Mistake Defense are fabricated stories and without merit.

D.     **The Obligors Move to Withdraw the Reference**

30.     Between April and June 2021, the Obligors each filed a similar motion to withdraw the reference (the "Motions to Withdraw")[15] in which the Obligors sought to withdraw the Adversary Proceedings from the Bankruptcy Court to the District Court.

31.     In July 2021, the Bankruptcy Court issued *Reports and Recommendations* (the "R&Rs") to the District Court recommending that the Motions to Withdraw be granted, but that the Bankruptcy Court retain the cases for all pre-trial matters, including the consideration (but not determination) of any dispositive motions.[16]

---

[13] *See* NexPoint Action, Docket No. 50 ¶ 42 (Ex. 30, Appx. 942-943); HCMS Action, Docket No. 34 ¶ 56 (Ex. 31, Appx. 953); HCRE Action, Docket No. 34 ¶ 58 (Ex. 32, Appx. 964).

[14] HCMFA Action, Docket No. 48 ¶¶ 38-47 (Ex. 33, Appx. 972-974); *see also Defendant's Motion for Leave to Amend Answer*, HCMFA Action, Docket No. 32 (Ex. 34, Appx. 977-1026).

[15] *See* Dondero Action, Docket No. 21 (Ex. 35, Appx. 1027-1047); HCMFA Action, Docket No. 20 (Ex. 36, Appx. 1048-1051); NexPoint Action, Docket No. 19 (Ex. 37, Appx. 1052-1055); HCMS Action, Docket No. 19 (Ex. 38, Appx. 1056-1060); HCRE Action, Docket No. 20 (Ex. 39, Appx. 1061-1065).

[16] *See* Dondero Action, Docket No.  67 (Ex. 40, Appx. 1066-1081); HCMFA Action, Docket No. 50 (Ex. 41, Appx. 1082-1094); NexPoint Action, Docket No. 40 (Ex. 42, Appx. 1095-1107); HCMS Action, Docket No. 47 (Ex. 43, Appx. 1108-1120); HCRE Action, Docket No. 44 (Ex. 44, Appx. 1121-1133).

32.     The applicable District Court subsequently adopted the Bankruptcy Court's R&Rs in the NexPoint, HCMS, HCRE, and HCMFA Actions, but the decision on the R&R in the Dondero Action remains pending in this Court.[17]

**E.      Plaintiff Responds to the Alleged Agreement Defense by Adding the New Claims and Defendants and All Parties Agree to Consolidate the Cases for Discovery and Other Purposes**

33.     In response to the contention that the Alleged Agreement purportedly barred it's recovery on the Notes, Plaintiff informed the Bankruptcy Court and the Obligors during a June 10, 2021 hearing that it was considering amending its Original Complaint to add (a) as defendants those who caused the Plaintiff to enter into the Alleged Agreement (the "Duty Defendants," and together with the Obligors, the "Defendants," and Plaintiff and Defendants together, the "Parties"), and (b) causes of action against the Duty Defendants for (i) actual fraudulent transfer, (ii) declaratory judgment, (iii) breach of fiduciary duty, and (iv) aiding and abetting breach of fiduciary duty (collectively, the "New Claims").

34.     In light of these developments, and given the commonality of facts and witnesses among the Notes Actions, the Parties agreed to, among other things, consolidate discovery for all purposes and coordinate the timing of the service of pleadings (*i.e.*, Plaintiff's amended complaints adding the New Claims against the Duty Defendants and the Defendants' responses thereto).  That agreement was memorialized in a *Stipulation and Agreed Order Governing Discovery and Other Pre-Trial Issues* dated August 17, 2021, approved by the Bankruptcy Court on September 6, 2021,

---

[17] *See* Case No. 21-cv-880, Docket No. 10 (Ex. 45, Appx. 1134-1136); 21-cv-881, Docket No. 14 (Ex. 46, Appx. 1137-1139); 21-cv-1378, Docket No. 5 (Ex. 47, Appx. 1140-1141); 21-1379, Docket No. 14 (Ex. 48, Appx. 1142-1144).

and entered in each respective Adversary Proceeding (collectively, the "Discovery Stipulations").[18]

35.     In each of the Discovery Stipulations, the Parties agreed to, in pertinent part, (a) a uniform schedule for the completion of all fact and expert discovery, and (b) the use of all discovery in any of the Notes Actions, stating:

> [t]he Parties agree that discovery taken in this case will be consolidated with discovery taken in the [other] [A]dversary [P]roceedings and all discovery in each of the [A]dversary [P]roceedings will be treated as if it was taken in all of the [A]dversary [P]roceedings [] so that each witness will only need to be deposed once and documents produced in any of the [Adversary] [P]roceedings are usable as if received in every other [Adversary] [P]roceeding.

Discovery Stipulations ¶ 3.

36.     In furtherance of the intent reflected in the Discovery Stipulations, and consistent with the related Orders granting Plaintiff's unopposed motions for leave to amend its pleadings, Plaintiff was "deemed to have served the Amended Complaint on the [applicable] [D]efendant on July 13, 2021,"[19] even though the Amended Complaints were not actually filed on the dockets until August 27, 2021.[20]

37.     As Plaintiff previewed in June, the Amended Complaints added the New Claims against the Duty Defendants.  Specifically, Plaintiff (a) added as Defendants (i) Nancy Dondero;

---

[18] Counsel for each of the Defendants except HCMFA signed a Discovery Stipulation on August 17, 2021.  *See* Dondero Action, Docket No. 86 (Ex. 49, Appx. 1145-1154); NexPoint Action, Docket No. 70 (Ex. 50, Appx. 1155-1164); HCMS Action, Docket No. 75 (Ex. 51, Appx. 1165-1174); and HCRE Action, Docket No. 70 (Ex. 52, Appx. 1175-1184).  Because HCMFA did not adopt the defense based on the Alleged Agreement, its Discovery Stipulation omitted the provisions concerning the amended pleadings and written discovery related thereto but was otherwise identical to the others, although it was signed a few days later.  *See* HCMFA Action, Docket No. 68 (Ex. 53, Appx. 1185-1194).

[19] *See* Dondero Action, Docket No. 75 ¶ 2 (Ex. 54, Appx. 1197); NexPoint Action, Docket No. 57 ¶ 2 (Ex. 55, Appx. 1200); HCMS Action, Docket No. 64 ¶ 2 (Ex. 56, Appx. 1203); and HCRE Action, Docket No. 59 ¶ 2 (Ex. 57, Appx. 1206).

[20] *See* Dondero Action, Docket No. 79 (Ex. 58, Appx. 1207-1277); NexPoint Action, Docket No. 63 (Ex. 59, Appx. 1278-1351); HCMS Action, Docket No. 68 (Ex. 60, Appx. 1352-1435); and HCRE Action, Docket No. 63 (Ex. 61, Appx. 1436-1519).

(ii) Dugaboy; and (iii) Mr. Dondero, in his capacity as an "aider and abetter" to Dugaboy, and (b) asserted claims against the Duty Defendants for (i) declaratory relief; (ii) breach of fiduciary duty; and (iii) aiding and abetting a breach of fiduciary duty, arising from the Duty Defendants' unlawful entry into the Alleged Agreements.[21]

38.     Pursuant to the Discovery Stipulations, all the Obligors (except HCMFA) filed their Answers to Plaintiff's Amended Complaints on September 2, 2021.[22]

39.     In their Answers to Plaintiff's Amended Complaints, Mr. Dondero, HCMS, HCRE, and NexPoint expanded upon, and uniformly adopted, the following affirmative defense based on the Alleged Agreement:

> Plaintiff's claims are barred … because prior to the demands for payment Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent. Specifically, sometime between December of the year in which each note was made and February of the following year, [] Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control.  The purpose of this agreement was to provide compensation to Defendant James Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry.  This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant [ ] believes there may be testimony or email correspondence that discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

Dondero Action, Docket No. 83 ¶ 82 (Ex. 62, Appx. 1533) ("Dondero's Answer").[23]

---

[21] Plaintiff also added claims for actual fraudulent transfer against Mr. Dondero, NexPoint, HCRE, and HCMS because their respective Notes were purportedly all subject to the Alleged Agreement.

[22] The Discovery Stipulations actually required the Defendants to respond to the Amended Complaint by August 30, 2021, but Plaintiff granted their collective requests for an extension to September 2, 2021, when the Answers to the Amended Complaints were filed.  *See* Dondero Action, Docket No. 83 (Ex. 62, Appx. 1520-1535); NexPoint Action, Docket No. 64 (Ex. 63, Appx. 1536-1549); HCMS Action, Docket No. 73 (Ex. 64, Appx. 1560-1565); and HCRE Action, Docket No. 68 (Ex. 65, Appx. 1566-1582).

[23] *See also* NexPoint Action, Docket No. 64 ¶ 83 (Ex. 63, Appx. 1547) (the "NexPoint Answer"); HCMS Action, Docket No. 73 ¶ 97 (Ex. 64, Appx. 1563-1564) (the "HCMS Answer"); and HCRE Action, Docket No. 68 ¶ 99 (Ex. 65, Appx. 1580) (the "HCRE's Answer").

**F.**     **All Defendants Participate in Coordinated Discovery and Related Matters**

40.     Instead of answering Plaintiff's Amended Complaints, the Duty Defendants filed nearly identical motions to (i) compel arbitration, (ii) stay the litigation, and (iii) dismiss the New Claims against them (collectively, the "Duty Defendants' Motions").[24] After the Duty Defendants' Motions were fully briefed, the Bankruptcy Court held a hearing on November 9, 2021. The Bankruptcy Court subsequently denied the Duty Defendants' Motions.[25]

41.     At the same time the Duty Defendants' Motions were being briefed and argued, the Parties pressed ahead in October and November 2021 with the coordinated discovery mandated by the Discovery Stipulations.

42.     In addition to exchanging additional documents in a unitary fashion, the Parties took or defended the following depositions for use in all the Notes Actions:

- **James Dondero** (i) in his personal capacity as an Obligor and as a Duty Defendant, and (ii) as the Rule 30(b)(6) representative of NexPoint, HCMS, and HCRE;

- **Nancy Dondero** (i) in her personal capacity as a Duty Defendant, and (ii) as Dugaboy's Rule 30(b)(6) representative;

- **Frank Waterhouse**, a third-party witness who serves as the Treasurer of Defendants HCMFA, NexPoint, and HCMS and who simultaneously served as Plaintiff's Chief Financial Officer when each Note was executed and each Obligor defaulted;

- **James P. Seery, Jr.**, Plaintiff's court-approved chief executive officer, (i) in his personal capacity, and (ii) as Plaintiff's Rule 30(b)(6) representative;

- **David Klos**, a long-time employee of the Plaintiff currently serving as Chief Financial Officer;

---

[24] *See* Dondero Action, Docket Nos. 80 (Ex. 66, Appx. 1583-1610), 81 (Ex. 67, Appx. 1611-1713), and 82 (Ex. 68, Appx. 1714-1746); NexPoint Action, Docket Nos. 66 (Ex. 69, Appx. 1747-1774), 67 (Ex. 70, Appx. 1775-1876), 68 (Ex. 71, Appx. 1877-1910), and 69 (Ex. 72, Appx. 1911-1938); HCMS Action, Docket Nos. 70 (Ex. 73, Appx. 1939-1966), 71 (Ex. 74, Appx. 1967-2068), and 72 (Ex. 75, Appx. 2069-2102); and HCRE Action, Docket Nos. 65 (Ex. 76, Appx. 2103-2130), 66 (Ex. 77, Appx. 2131-2232), and 67 (Ex. 78, Appx. 2233-2266).

[25] The Bankruptcy Court issued a bench ruling denying the Duty Defendants' Motions on November 12, 2021, and requested that the Plaintiff provide orders consistent with such ruling. The Plaintiff provided such orders to the Bankruptcy Court and their execution is pending.

- **Kristin Hendrix**, a long-time employee of the Plaintiff currently serving as Controller;

- **Alan Johnson**, an expert called to testify by Mr. Dondero, NexPoint, HCMS, and HCRE in connection with matters purportedly relating to the Alleged Agreement;

- **Bruce McGovern**, an expert called to testify by Mr. Dondero, NexPoint, HCMS, and HCRE in connection with matters purportedly relating to the Alleged Agreement;

- **Dennis C. Sauter, Jr.**, the General Counsel for HCMFA; and

- **Dustin Norris**, as HCMFA's Rule 30(b)(6) representative.

(Collectively, the "Common Witnesses").

43.     Although HCMFA does not rely on the Alleged Agreement to defend against the Adversary Proceeding brought against it, the facts and circumstances of the claims and defenses concerning the HCMFA Notes are inextricably linked to the facts and circumstances of the claims and defenses concerning the balance of the Notes.  Indeed, HCMFA implicitly admitted as much by signing its own Discovery Stipulation whereby it agreed – with every other Defendant – to coordinate and use all discovery in all of the Adversary Proceedings.  Based on that agreement, counsel to HCMFA vigorously examined every adverse witness, including Mr. Waterhouse, Mr. Seery, Mr. Klos, and Ms. Hendrix, even though counsel for the other Defendants did so as well.

44.     Plaintiff also intends to offer much of the same documentary and testimonial evidence to prove that both the Alleged Agreement and HCMFA's Mistake Defense are fabrications, including with respect to:

- Plaintiff's audited financial statements (prepared subject to management representation letters signed by Mr. Dondero and Mr. Waterhouse) showed that each of the Notes (including the HCMFA Notes) (a) was carried as an asset on Plaintiff's balance sheet, (b) had a value equal to the unpaid principal and interest then due, and (c) was disclosed without reference to the Alleged Agreement, HCMFA's Mistake Defense, or any other defense;

- HCMFA and NexPoint (financial advisory firms) jointly reported to their clients (publicly and privately traded funds) in October 2020 that they were obligated to

14

pay Highland the amounts due under the HCMFA Notes and the NexPoint Notes, respectively;

- Without exception, Plaintiff's contemporaneous books and records recorded the Notes (including the HCMFA Notes) as valid debts due and owing by each of the Obligors to Plaintiff;

- Without exception, throughout Plaintiff's bankruptcy (including during the period from the Petition Date through January 9, 2020, when Mr. Dondero solely controlled Plaintiff), Plaintiff's bankruptcy filings (most of which were prepared or signed by Mr. Waterhouse) reported the Notes (including the HCMFA Notes) as being valid debts due and owing by each of the Obligors;

- The Notes (including the HCMFA Notes) were identified as substantial assets and sources of recovery under Plaintiff's proposed Plan, yet none of the Obligors informed the Court, Plaintiff, or any creditors of any of their defenses even though (a) each of them filed a Plan Objection, and (b) the Adversary Proceedings had already been commenced when the confirmation hearing on the Plaintiff's Plan was conducted;

- Mr. Waterhouse, who at all relevant times simultaneously served as Plaintiff's Chief Financial Officer and the Treasurer of HCMFA, NexPoint, and HCMS, has testified and will testify, among other things, that (a) he was not informed of the existence of the Alleged Agreement until after the Adversary Proceedings were commenced, and (b) no one ever told him that he executed the HCMFA Notes by mistake or without authority; and

- David Klos and Kristin Hendrix, both long-time employees in the Plaintiff's corporate accounting group, have testified and will testify, among other things, that they were never informed (a) of the existence of the Alleged Agreement, or (b) that the HCMFA Notes were executed by Mr. Waterhouse by mistake or without authority.

(Collectively, the "Common Facts," and together with the Common Witnesses, the "Common Facts and Witnesses").

45.    Based on the depositions, (a) Mr. Dondero, Mr. Waterhouse, Mr. Seery, Mr. Klos, and Ms. Hendrix are expected to testify in all of the Notes Actions, including the one against HCMFA, and (b) Ms. Dondero (individually and in her capacity as the Dugaboy Trustee), Mr. Johnson, and Mr. McGovern are expected to offer the same testimony concerning matters relating to the Alleged Agreement in all of the Adversary Proceedings, except the one against HCMFA.

15

46.     In addition to participating in consolidated discovery, the Parties are also coordinating the briefing and argument for various motions.

47.     For example, on October 29, 2021, NexPoint moved to extend the deadlines for expert disclosures and discovery set forth in the Discovery Stipulations, and HCRE and HCMS promptly joined that motion.[26]  Those Defendants and Plaintiff subsequently agreed to a briefing and hearing schedule, as amended.[27]

48.     In addition, Plaintiff recently informed the Bankruptcy Court and the Defendants that it intends to move for summary judgment ("Plaintiff's Summary Judgment Motion").[28]  The Bankruptcy Court fixed the following briefing schedule on Plaintiff's Summary Judgment Motion:

- December 17, 2021: Plaintiff files its Summary Judgment Motion;

- January 17, 2022: Obligors file their Opposition;

- January 31, 2022: Plaintiff files its Reply.

### III.     ARGUMENT

**A.     Legal Standard**

**1.     The Court in Which the First Notes Action Was Filed Determines Whether to Consolidate Subsequently Filed Cases**

49.     Under the "first-to-file" rule, this Court is the proper court to hear and determine the Motion because (i) the Dondero Action was the first of the Notes Actions to be filed in the Bankruptcy Court, and (ii) the Dondero Action was referred to this Court following the grant of the Withdrawal Motions.

---

[26] NexPoint Action, Docket No. 86 (Ex. 79, Appx. 2267-2712); HCMS Action, Docket No. 91 (Ex. 80, Appx. 2713-3163); and HCRE Action, Docket No. 86 (Ex. 81, Appx. 3164-3614).

[27] NexPoint Action, Docket No. 99 (Ex. 82, Appx. 3615-3624); HCMS Action, Docket No. 104 (Ex. 83, Appx. 3625-3634); and HCRE Action, Docket No. 99 (Ex. 84, Appx. 3635-3644).

[28] Soon after the hearing on the Duty Defendants' Motions, Plaintiff informed the Defendants that it only intends to seek summary judgment on the breach of contract and turnover claims asserted against the Obligors (*i.e.*, Counts I and II) and all defenses related thereto, because if granted, the balance of Plaintiff's claims will be rendered moot.

50.     The Fifth Circuit adheres to the rule that the court in which a case is "first filed" is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should be consolidated or otherwise proceed separately.  *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Wells Fargo Bank, N.A. v. West Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846 (N.D. Tex. 2009).  The first-to-file rule is based on "principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).  It "requires federal district courts—courts of coordinate jurisdiction and equal rank— to exercise care to avoid interference with each other's affairs."  *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

51.     The "first to file" rule does not require that the cases be identical; rather, the "crucial inquiry is one of 'substantial overlap.'" *Save Power*, 121 F.3d at 948; *see also Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971) ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in [] the jurisdiction first seized of the issues").

52.     When applying the "first to file" rule to, the benchmark date is the date on which the complaint was initiated.  *See Boh Bros. Constr. Co., L.L.C. v. Cal. First Nat'l Bank*, CV 16-2699, 2016 WL 9404906, at *4 (E.D. La. June 1, 2016); *Igloo Prods. Corp. v. Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990) (holding that for first-to-file rule purposes, "[t]he Court considers the date of filing in state court to be the relevant benchmark" for a federal action that has been removed from state court, noting "[t]his conclusion seems inescapable, as a district court takes the case as it finds it when it is removed from state court"); *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at *3-4 (S.D. Tex. June 2, 2009) (noting that the first "[a]ction, although not removed to federal court until after this action was initiated, is the

17

first-filed action based on the time [party] filed its petition in state court"); *Poche v. Geo–Ram, Inc.*, No. 96–1437, 1996 WL 371679, at *2 (E.D. La. July 2, 1996) ("Since [defendant] filed its suit in the Texas state court before [plaintiff] filed his suit here, the Court finds that the controversy was 'first-filed' in the Southern District of Texas").

53.     Here, the Adversary Proceeding numbers and the time-stamp on each Original Complaint[29] establish that the Dondero Action was the first Notes Action to be filed in the Bankruptcy Court.  Following the Motions to Withdraw, the Dondero Action was referred to this Court, making this Court the proper forum to hear and determine the Motion.  Accordingly, this Court has jurisdiction to decide the Motion and, if granted, the Notes Actions should be consolidated before this Court.  *See* Local Civil Rules for the United States District Court, Northern District of Texas ("L.R.") 42.1 ("After consolidation, all pleadings, motions, or other papers must only bear the caption of the first case filed").

**2.      Trial Courts Have Broad Discretion to Consolidate Cases Involving Similar Parties, Facts, and Legal Issues**

54.     Federal Rule of Civil Procedure 42(a) provides that if actions "involve a common question of law or fact," the court may "consolidate the actions" or "issue any other order to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a) ("Rule 42").

55.     The stated purpose of Rule 42 is to avoid unnecessary costs or delay.  *See Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (citing to Rule 42 and finding it was within district court's discretion to consolidate cases where "considerable confusion and repetition could be

---

[29] The Dondero Original Complaint was filed on January 22, 2021 at 17:50 p.m. and was assigned Adv. Pro. No. 21-03003; the HCMFA Original Complaint was filed on January 22, 2021 at 17:54 p.m. and was assigned Adv. Proc. No. 21-03004; the NexPoint Original Complaint was filed on January 22, 2021 at 17:59 p.m. and was assigned Adv. Pro. No. 21-03005; the HCMS Original Complaint was filed on January 22, 2021 at 18:05 p.m. and was assigned Adv. Pro. No. 21-03006; and the HCRE Original Complaint was filed on January 22, 2021 at 18:10 p.m. and was assigned Adv. Pro. No. 21-03007.

18

avoided"); *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984) (ordering district court to consolidate two cases for trial "in the interests of equity and judicial economy").

56.     When deciding whether to consolidate cases, district courts may consider the following factors: (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law or fact, (4) if there is risk of prejudice or confusion if the cases are consolidated, and if so, whether the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately.  *See Mayfield v. Am. Auto. Ins. Co.*, CIV.A. 502CV137, 2003 WL 21250935, at *1 (N.D. Tex. May 27, 2003); *Wharton v. U.S. Dept. of Housing and Urban Dev.*, No. 2:19-CV-300, 2020 WL 6749943, at *1 (S.D. Tex. March 3, 2020).

57.     The third factor—whether the cases involve common questions of law or fact—is considered to be the "threshold requirement" of Rule 42. *Wharton*, 2020 WL 6749943 at *1; *see also Morrison v. Amway Corp.*, 186 F.R.D. 401, 403 (S.D. Tex. 1998) ("Actions involving the same parties are likely candidates for consolidation, but a common question of law or fact is sufficient"); *Cox v. Nueces County*, No. 2:12-CV-339, 2014 WL 12781296, at *3 (S.D. Tex. Dec. 10, 2014) (noting that "common questions of law or fact" is "the threshold requirement of Rule 42(a)").

58.     Rule 42 has been applied liberally and grants courts "broad" discretion in invoking it.  *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("In this Circuit, district judges have been urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion," noting "the trial court's managerial power is especially strong and flexible in matters of consolidation") (internal

quotations omitted); *Gentry*, 487 F.3d at 581 ("The decision to invoke the rule is entirely within the discretion of the district court as it seeks to promote the administration of justice"); *Morrison*, 186 F.R.D. at 402 ("The Court has broad discretion to decide whether consolidation is desirable under Rule 42(a) and may even consolidate cases *sua sponte*").

**B.**     **Consolidation of the Notes Actions Is Warranted**

59.     Consolidation of the Notes Actions is warranted because each of the factors considered by courts is easily satisfied.

60.     First, the Notes Actions were initiated in, and are now pending in, the same courts. Specifically, the Notes Actions (i) were commenced in the Bankruptcy Court, and (ii) following the grant of the Obligors' Motions to Withdraw, are currently pending in the United States District Court for the Northern District of Texas, Dallas Division.  Therefore, the first prong is met.  *See Wharton*, 2020 WL 6749943 at *1 (first factor satisfied where both cases are before the United States District Court for the Southern District of Texas").

61.     The second factor is also satisfied because the Notes Actions involve common parties.  Highland is the plaintiff in all of the Notes Actions, and all of the Defendants in the Notes Actions are controlled by, or otherwise associated with, Mr. Dondero (*i.e.*, Mr. Dondero personally; the Corporate Obligors, which were and are controlled by Mr. Dondero; Nancy Dondero, Mr. Dondero's sister; and Dugaboy, a trust created by Mr. Dondero for which he is the sole beneficiary during his lifetime).[30]  *See Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action").  In addition, all of the Duty Defendants are Defendants in all of the Notes Actions except the HCMFA Action.

---

[30] In addition, all the Duty Defendants are Defendants in all of the Notes Actions except the HCMFA Action.

62.    Indeed, (a) Mr. Dondero testified at deposition individually and in his capacity as the Rule 30(b)(6) witness for NexPoint, HCRE, and HCMS; (b) Nancy Dondero testified individually and in her capacity as Dugaboy's Rule 30(b)(6) witness; (c) and, as described above, other witnesses (*e.g.*, Frank Waterhouse David Klos, Kristin Hendrix, Alan Johnson, and Bruce McGovern) will offer the same testimony concerning issues related to the Alleged Agreement and/or the circumstances surrounding the HCMFA Notes.  For these reasons alone, consolidating the Notes Actions is in the interests of judicial economy.  *See Cox*, 2014 WL 12781296 at *3 (recommending consolidation of cases where "the defendants are the same in both cases," and where "the probable testimony of witnesses and evidence would be largely the same if the cases were tried separately," noting "it would be senseless to impose unnecessary expense and inconvenience by requiring the same witnesses to testify about the same facts" in multiple trials).

63.    The third factor—whether the cases "involve a common question of law or fact" and the threshold requirement of Rule 42—also weighs heavily in favor of consolidation.  *See Wharton*, 2020 WL 6749943 at *1; *Morrison,* 186 F.R.D. at 403.

64.    In addition to the Common Facts and Witnesses that exist between the HCMFA Action and the other Notes Actions identified above, the following additional common questions of law and fact also exist between and among the Notes Actions:

- Plaintiff has asserted ***the same claims*** against the Obligors (*i.e.*, breach of contract, turnover, and actual fraudulent transfer) so Plaintiff will have the same burden of proof against them in every Notes Action;

- Plaintiff has asserted ***the same claims*** against the Duty Defendants (*i.e.*, declaratory judgment, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty) so Plaintiff will have the same burden of proof against them in every Notes Action (except the HCMFA Action);

- In every Notes Action except the NexPoint Action, Plaintiff is suing to collect on ***demand notes that are the same in form and substance*** except for the date, the maker, and the original principal amount;

21

- In the NexPoint Action, the HCMS Action, and the HCRE Action, Plaintiff is suing to collect on *Term Notes that are the same in form and substance* except for the maker, the original principal amount, and the identity of the previously issued demand notes that were the subject of the "roll ups";

- The Obligors under the Term Notes *all* contend that Plaintiff caused their defaults by failing to make the payments on their behalf as allegedly required under certain shared services agreements, a defense involving the same contracts and questions of law;

- Only two people – Mr. Dondero and Mr. Waterhouse, each an officer of each Obligor (except Mr. Waterhouse and HCRE), and a former officer of the Plaintiff – signed the Notes and each will testify in every Notes Action; and

- Four of the five Obligors rely on the Alleged Agreement as a defense to the Notes Actions, and *the evidence relating to that defense will be the same*.

65.     There can thus be no credible dispute that the Notes Actions involve common questions of law and fact. *See Morrison*, 186 F.R.D. at 403 (granting motion for consolidation where "[t]here are presently three actions before this Court involving primarily the same parties and primarily the same issues" and where such issues "tie[] them together and [are] dispositive of the cases.  This matter need only be addressed once"); *Cox*, 2014 WL 12781296 at *3 (finding that cases involve common questions of law and fact where "the facts of both cases overlap and are intertwined," and where plaintiffs "allege similar circumstances surrounding" their claims," even though "defendants'' arguments and the plaintiffs' cases are factually different"); *Mayfield*, 2003 WL 21250935 at *2 (granting motion to consolidate based on "common parties, common facts, and common issues of law" where "[i]n Case One, [defendant] asks this Court to declare that it has no duty to defend or indemnify [plaintiff] under certain [insurance] policies issued to [plaintiff]. In Case Two, [plaintiff] asks this Court to declare that [defendant] has a duty to defend and indemnify [plaintiff] pursuant to the aforesaid policies and to require that [defendant] perform its contractual duties under the policies and fairly and equitably settle any claims made against [plaintiff]").

66.    For this reason alone, consolidation of the Notes Actions is warranted.

67.    The fourth prong also weighs in favor of consolidation because there is no meaningful risk of prejudice and confusion if the cases are consolidated.  Any such risk would be decisively outweighed by the risk of inconsistent rulings on common factual and legal issues. *See Mayfield*, 2003 WL 21250935 at *2 ("Whatever concomitant prejudice or possible confusion might result as a consequence of consolidating Case One and Case Two—and this Court finds none—is far outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately").

68.    Significantly, and among other things, (a) Plaintiff asserts the same claims against each of the Obligors; (b) Plaintiff asserts the same claims against each of the Duty Defendants; (c) Mr. Dondero is, or controls, or is related to, each Defendant; (d) four of the five Obligors rely on the same Alleged Agreement as a primary defense; (e) each of the Notes is substantively the same in form and substance; (f) Plaintiff will rely on the Common Facts and Witnesses to rebut the affirmative defense based on the Alleged Agreement as well as HCMFA's Mistake Defense; and (g) the credibility of many of the witnesses will have to be assessed in most if not all of the Notes Actions.  These core issues of fact and law should be ruled upon consistently, and consolidating the Notes Actions will aid the Court in "treating similar factual and legal issues uniformly."  *See Wharton*, 2020 WL 6749943 at *2 (ordering consolidation where, "although [plaintiffs] seek slightly different outcome …. These [claims] should be ruled upon consistently, and consolidating these cases will assist the district court and Fifth Circuit in treating similar factual and legal issues uniformly"); *Cox*, 2014 WL 12781296 at *3 ("[C]onsolidating these almost identical cases will assist the District Court and Fifth Circuit in treating similar factual and legal issues with consistency"); *Morrison*, 186 F.R.D. at 403 (finding consolidation of three actions was warranted

where they involve "primarily the same parties and primarily the same issues" which are "tie[d] together and is dispositive of the cases. This matter need only be addressed once").

69.     Consolidation also will not deprive any parties of any substantial rights that they may have had if the actions had proceeded separately, because the five Notes Actions will retain their separate identities to the point that each will require its own judgment. *See Miller*, 729 F.2d at 1036.

70.     Finally, and for these same reasons, consolidating these five cases will conserve judicial resources.  As set forth above, the Notes Actions involve common claims, overlapping factual and legal issues, and common parties and witnesses.  Deciding dispositive motions and (if necessary) trying these issues in one forum will conserve the resources of the District Court and of the Parties and avoid inconsistent judgments and unnecessary costs and delays that would inevitably result from having the Notes Actions determined in five separate proceedings. *See Mayfield*, 2003 WL 21250935 at *2 (finding consolidation of cases "would conserve judicial resources, would reduce the time for resolving the cases when compared to separate trials, and would reduce the expense of trying the cases separately").   The fifth factor thus favors consolidation.

71.     Accordingly, all factors weigh in favor of consolidation of the Notes Actions, and consolidation of the Notes Actions before this Court is therefore warranted.

### IV.      <u>CONCLUSION</u>

WHEREFORE, Highland respectfully requests that the Court (i) grant its Motion, (ii) consolidate the Notes Actions before this Court, and (iii) grant such other and further relief as the Court deems just and proper.

DOCS_NY:44559.13 36027/003

Dated:  December 7, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

25