Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
Email:  drukavina@munsch.com

ATTORNEYS FOR NEXPOINT ADVISORS, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Civil Proceeding No. |
| | § | |
| vs. | § | 3:21-cv-01010-E |
| | § | |
| JAMES DONDERO, NANCY DONDERO, AND | § | |
| THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**APPENDIX OF NON-PARTY HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. IN OPPOSITION
TO PLAINTIFF'S MOTION TO CONSOLIDATE NOTE CASES**

TO THE HONORABLE ADA BROWN, U.S. DISTRICT JUDGE:

COMES NOW Highland Capital Management Fund Advisors, L.P. ("HCMFA"), a non-party to this civil proceeding but a party against whom relief is sought by Highland Capital Management, L.P. (the "Plaintiff") in its *Highland Capital Management, L.P.'s Motion to Consolidate Notes Actions* (the "Motion"), and files this its *Appendix of Non-Party Highland*

*Capital Management Fund Advisors, L.P. In Opposition to Plaintiff's Motion to Consolidate Note Cases*, as follows:

| Tab | Description | Range |
|-----|-------------|-------|
| 1 | Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate | 1-20 |
| 2 | Defendant's Original Answer | 21-27 |
| 3 | Defendant's Amended Answer | 28-36 |
| 4 | Order | 37-38 |
| 5 | Defendant's Second Motion for Leave to Amend Answer and Brief In Support Thereof | 39-65 |
| 6 | Amended Complaint for (i) Breach of Contract, (ii) Turnover of Property; (iii) Fraudulent Transfer, and (iv) Breach of Fiduciary Duty | 66-83 |
| 7 | Defendant NexPoint Advisors, L.P.'s Answer to Amended Complaint | 84-96 |
| 8 | Declaration of Davor Rukavina | 97-98 |

RESPECTFULLY SUBMITTED this 16th day of December, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 16th day of December, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Plaintiff through its counsel of record.

/s/  Davor Rukavina
_____
Davor Rukavina

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054-sgj11 |
| Debtor. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| vs. | § § § | _____ |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § | |
| Defendant. | § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

HCMFA APP 0001

**COMPLAINT FOR (I) BREACH OF CONTRACT
AND (II) TURNOVER OF PROPERTY OF THE DEBTOR'S ESTATE**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, as and for its complaint (the "Complaint") against defendant, Highland Capital Management Fund Advisors, L.P. ("HCMFA" or "Defendant"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

## PRELIMINARY STATEMENT

1.      The Debtor brings this action against HCMFA as a result of HCMFA's defaults under two promissory notes executed by HCMFA in favor of the Debtor in the aggregate original principal amount of $7,400,000 and payable upon the Debtor's demand.  Despite due demand, HCMFA has failed to pay amounts due and owing under the notes and the accrued but unpaid interest thereon.

2.      Through this Complaint, the Debtor seeks (a) damages from HCMFA in an amount equal to (i) the aggregate outstanding principal due under the Notes (as defined below), plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the Notes), and (b) turnover by HCMFA to the Debtor of the foregoing amounts.

## JURISDICTION AND VENUE

3.      This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

DOCS_NY:41996.4 36027/002

HCMFA APP 0002

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

8.      Upon information and belief, HCMFA is a limited partnership with offices located in Dallas, Texas and is organized under the laws of the state of Delaware.

## CASE BACKGROUND

9.      On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

10.     On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis LP and Acis GP.

HCMFA APP 0003

11.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

12.     The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## STATEMENT OF FACTS

### A.     The HCMFA Notes

13.     HCMFA is the maker under a series of promissory notes in favor of the Debtor.

14.     Specifically, on May 2, 2019, HCMFA executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,400,000 ("HCMFA's First Note").  A true and correct copy of HCMFA's First Note is attached hereto as **Exhibit 1**.

15.     On May 3, 2019, HCMFA executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $5,000,000 ("HCMFA's Second Note," and together with HCMFA's First Note, the "Notes").  A true and correct copy of HCMFA's Second Note is attached hereto as **Exhibit 2**.

16.     Section 2 of each Note provides: "**Payment of Principal and Interest**.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee."

17.     Section 4 of each Note provides:

**Acceleration Upon Default**.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

---

[2] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

18.     Section 6 of each Note provides:

**Attorneys' Fees**.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**B.     HCMFA's Default under Each Note**

19.     By letter dated December 3, 2020, the Debtor made demand on HCMFA for payment under the Notes by December 11, 2020 (the "Demand Letter").  A true and correct copy of the Demand Letter is attached hereto as **Exhibit 3**.  The Demand Letter provided:

By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $7,687,653.07, which represents all accrued interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Demand Letter (emphasis in the original).

20.     Despite the Debtor's demand, HCMFA did not pay all or any portion of the amounts demanded by the Debtor on December 11, 2020 or at any time thereafter.

21.     As of December 11, 2020, there was an outstanding principal amount of $2,457,517.15 on HCMFA's First Note and accrued but unpaid interest in the amount of $35,884.46, resulting in a total outstanding amount as of that date of $2,493,401.61.

22.     As of December 11, 2020, there was an outstanding principal balance of $5,119,827.40 on HCMFA's Second Note and accrued but unpaid interest in the amount of $74,424.05, resulting in a total outstanding amount as of that date of $5,194,251.45.

23.     Thus, as of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Notes was $7,687,653.07

24.     Pursuant to Section 4 of each Note, each Note is in default and is currently due and payable.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

25.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

26.     Each Note is a binding and enforceable contract.

27.     HCMFA breached each Note by failing to pay all amounts due to the Debtor upon the Debtor's demand.

28.     Pursuant to each Note, the Debtor is entitled to damages from HCMFA in an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCMFA's breach of its obligations under each of the Notes.

29.     As a direct and proximate cause of HCMFA's breach of each Note, the Debtor has suffered damages in the total amount of at least $7,687,653.07 as of December 11, 2020, plus an amount equal to all accrued but unpaid interest from that date, plus the Debtor's cost of collection.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCMFA Pursuant to 11 U.S.C. § 542(b))

30.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

31.     HCMFA owes the Debtor an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs

6

and reasonable attorneys' fees and expenses) for HCMFA's breach of its obligations under each of the Notes.

32.     Each Note is property of the Debtor's estate, and the amounts due under each Note are matured and payable upon demand.

33.     HCMFA has not paid the amounts due under each Note to the Debtor.

34.     The Debtor has made demand for the turnover of the amounts due under each Note.

35.     As of the date of filing of this Complaint, HCMFA has not turned over to the Debtor all or any of the amounts due under each of the Notes.

36.     The Debtor is entitled to the turnover of all amounts due under each of the Notes.

WHEREFORE, the Debtor prays for judgment as follows:

(i)     On its First Claim for Relief, damages in an amount to be determined at trial, including, among other things, (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)    On its Second Claim for Relief, ordering turnover by HCMFA to the Debtor of an amount equal to (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses); and

(iii)   Such other and further relief as this Court deems just and proper.

Dated: January 22, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:      jpomerantz@pszjlaw.com
                ikharasch@pszjlaw.com
                jmorris@pszjlaw.com
                gdemo@pszjlaw.com
                hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:41996.4 36027/002

HCMFA APP 0008

# EXHIBIT 1

**EXHIBIT 1**

HCMFA APP 0009

# PROMISSORY NOTE

$2,400,000.00                                                                          May 2, 2019

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION FOUR HUNDRED THOUSAND and 00/100 Dollars ($2,400,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.  <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the short-term "*applicable federal rate*" (2.39%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.  <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand.

3.  <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.  <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.  <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.  <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7. <u>Limitation on Agreements</u>. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8. <u>Governing Law</u>. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____
FRANK WATERHOUSE

2

# EXHIBIT 2

**EXHIBIT 2**

HCMFA APP 0012

# PROMISSORY NOTE

$5,000,000.00                                                                                                          May 3, 2019

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of FIVE MILLION and 00/100 Dollars ($5,000,000.00), together with interest, on the terms set forth below (the "*Note*").  All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the short-term "*applicable federal rate*" (2.39%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand.

3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____
FRANK WATERHOUSE

2

HCMFA APP 0014

# EXHIBIT 3

**EXHIBIT 3**

HCMFA APP 0015

# HIGHLAND CAPITAL MANAGEMENT, L.P.

December 3, 2020

Highland Capital Management Fund Advisors, LP
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: Frank Waterhouse, CFO

     Re: Demand on Promissory Notes:

Dear Mr. Waterhouse,

Highland Capital Management Fund Advisors, LP ("Maker") entered into the following promissory notes (collectively, the "Notes"), among others,[1] in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 5/2/2019 | $2,400,000 | $2,457,517.15 | $35,884.46 | $2,493,401.61 |
| 5/3/2019 | $5,000,000 | $5,119,827.40 | $74,424.05 | $5,194,251.45 |
| **TOTALS** | **$7,400,000** | **$7,577,344.55** | **$110,308.52** | **$7,687,653.07** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee. By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $7,687,653.07, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds. Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are

---

[1] Maker is also obligated to pay amounts due under promissory notes issued in favor of Payee prior to April 15, 2019. Pursuant to that certain *Acknowledgment from HCMLP*, dated as of April 15, 2019, Payee agreed not to demand payment on such amounts until May 31, 2021. Payee reserves all rights with respect to such amounts.

HCMFA APP 0016

expressly reserved. Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full. Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       DC Sauter

**Appendix A**

ABA #:          322070381
Bank Name:      East West Bank
Account Name:   Highland Capital Management, LP
Account #:      5500014686

HCMFA APP 0018

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Highland Capital Management, L.P. | DEFENDANTS<br>Highland Capital Management Fund Advisors, L.P. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Hayward LLP<br>10501 N. Central Expressway, Suite 106<br>Dallas, Texas 75231  Tel.: (972) 755-7100 | **ATTORNEYS** (If Known)<br>Munsch Hardt Kopf & Harr, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, Texas 75201  Tel.: (214) 855-7500 |
| **PARTY** (Check One Box Only)<br>☑ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Count 1:  Breach of contract; Count 2:  Turnover pursuant to 11 U.S.C. 542

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑ 2  11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $7,687,653.07 plus interest, fees, and expenses |

Other Relief Sought

HCMFA APP 0019

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br> 19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br> Northern District of Texas | DIVISION OFFICE<br> Dallas | NAME OF JUDGE<br>Stacey G. C. Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br> January 22, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br> Zachery Z. Annable | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

HCMFA APP 0020

K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659
artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306
Lee.hogewood@klgates.com

*Counsel for Highland Capital Management Fund
Advisors, L.P.*

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375
drukavina@munsch.com
jvasek@munsch.com

*Counsel for Highland Capital Management Fund
Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 21-03004 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S ORIGINAL ANSWER

COMES NOW Highland Capital Management Fund Advisors, L.P. (the "Defendant"), the

defendant in the above-styled and numbered adversary proceeding (the "Adversary Proceeding")

filed by Highland Capital Management, L.P. (the "Plaintiff"), and files this its *Defendant's*

*Original Answer* (the "Answer"), responding to the *Complaint for (I) Breach of Contract and (II)*

*Turnover of Property of the Debtor's Estate* (the "<u>Complaint</u>"). Where an allegation in the Complaint is not expressly admitted in this Answer, it is denied.

## PRELIMINARY STATEMENT

1. The first sentence of ¶ 1 sets forth the Plaintiff's objective in bringing the Complaint and does not require a response. To the extent it contains factual allegations, they are denied. The second sentence contains a legal conclusion that does not require a response. To the extent it contains factual allegations, they are denied.

2. Paragraph 2 contains a summary of the relief the Plaintiff seeks and does not require a response. To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3. The Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional authority on the Bankruptcy Case to adjudicate this dispute. Any allegations in ¶ 3 not expressly admitted are denied.

4. The Defendant admits that the Court has statutory (but not Constitutional) jurisdiction to hear this Adversary Proceeding. Any allegations in ¶ 4 not expressly admitted are denied.

5. The Defendant denies that a breach of contract claim is core. The Defendant denies that a § 542(b) turnover proceeding is the appropriate mechanism to collect a contested debt. The Defendant admits that a § 542(b) turnover proceeding is statutorily core but denies that it is Constitutionally core under *Stern v. Marshall*. The Defendant does <u>not</u> consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding. Any allegations in ¶ 5 not expressly admitted are denied.

6. The Defendant admits ¶ 6 of the Complaint.

## THE PARTIES

7. The Defendant admits ¶ 7 of the Complaint.

8. The Defendant admits ¶ 8 of the Complaint.

## CASE BACKGROUND

9. The Defendant admits ¶ 9 of the Complaint.

10. The Defendant admits ¶ 10 of the Complaint.

11. The Defendant admits ¶ 11 of the Complaint.

12. The Defendant admits ¶ 12 of the Complaint.

## STATEMENT OF FACTS

**A.** **The HCMFA Notes**

13. The Defendant admits that it has executed at least one promissory note under which the Debtor is the payee. Any allegations in ¶ 13 not expressly admitted are denied.

14. The Defendant admits ¶ 14 of the Complaint.

15. The Defendant admits ¶ 15 of the Complaint.

16. The Defendant denies ¶ 16 of the Complaint. The document speaks for itself and the quote set forth in ¶ 16 is not verbatim.

17. The Defendant denies ¶ 17 of the Complaint. The document speaks for itself and the quote set forth in ¶ 17 is not verbatim.

18. The Defendant admits ¶ 18 of the Complaint.

**B.** **HCMFA's Default under Each Note**

19. The Defendant admits that Exhibit 3 to the Complaint (the "Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself. To the extent ¶ 19 of the Complaint asserts a legal conclusion, no response is required, and it is denied. To the extent not expressly admitted, ¶ 19 of the Complaint is denied.

20.     To the extent ¶ 20 of the Complaint asserts a legal conclusion, no response is necessary, and it is denied.  The Defendant otherwise admits ¶ 20 of the Complaint.

21.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 21 of the Complaint and therefore denies the same.

22.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 22 of the Complaint and therefore denies the same.

23.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 23 of the Complaint and therefore denies the same.

24.     The Defendant denies ¶ 24 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

25.     Paragraph 25 of the Complaint is a sentence of incorporation that does not require a response.  All prior denials are incorporated herein by reference.

26.     Paragraph 26 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 26 of the Complaint and therefore denies the same.

27.     Paragraph 27 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 27 of the Complaint and therefore denies the same.

28.     Paragraph 28 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant lacks knowledge or information sufficient

to form a belief about the truth of the allegations in ¶ 28 of the Complaint and therefore denies the same.

29. The Defendant denies ¶ 29 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCMFA Pursuant to 11 U.S.C. § 542(b))

30. Paragraph 30 of the Complaint is a sentence of incorporation that does not require a response. All prior denials are incorporated herein by reference.

31. Paragraph 31 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 31 of the Complaint and therefore denies the same.

32. Paragraph 32 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 32 of the Complaint and therefore denies the same.

33. The Defendant denies ¶ 33 of the Complaint.

34. Paragraph 34 of the Complaint states a legal conclusion that does not require a response. The Defendant admits that the Plaintiff transmitted the Demand Letter. To the extent ¶ 34 alleges other facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 34 of the Complaint and therefore denies the same.

35. The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 35 of the Complaint and therefore denies the same.

36. Paragraph 36 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient

to form a belief about the truth of the allegations in ¶ 36 of the Complaint and therefore denies the same.

37.     The Defendant denies that the Plaintiff is entitled to the relief requested in the prayer, including parts (i), (ii), and (iii).

## JURY DEMAND

38.     The Defendant demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

39.     The Defendant does <u>not</u> consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully request that, following a trial on the merits, the Court enter a judgment that the Plaintiff take noting on the Complaint and provide the Defendant such other relief to which it is entitled.

RESPECTFULLY SUBMITTED this 1st day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    drukavina@munsch.com
    jvasek@munsch.com

**K&L GATES LLP**

    Artoush Varshosaz (TX Bar No. 24066234)
    1717 Main Street, Suite 2800
    Dallas, TX 75201
    Tel: (214) 939-5659
    artoush.varshosaz@klgates.com

    A. Lee Hogewood, III (*pro hac vice*)
    4350 Lassiter at North Hills Ave., Suite 300
    Raleigh, NC 27609
    Tel: (919) 743-7306
    Lee.hogewood@klgates.com

**COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on the 1st day of March, 2021, a true and correct copy of this document was electronically served by the Court's ECF system on parties entitled to notice thereof, including counsel for the Plaintiff.

    /s/ Davor Rukavina
    Davor Rukavina, Esq.

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 21-03004 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | |
| FUND ADVISORS, L.P. | § | |
| | § | |
| Defendant. | § | |

## **DEFENDANT'S AMENDED ANSWER**

COMES NOW Highland Capital Management Fund Advisors, L.P. (the "Defendant"), the

defendant in the above-styled and numbered adversary proceeding (the "Adversary Proceeding")

filed by Highland Capital Management, L.P. (the "Plaintiff"), and files this its *Defendant's*

*Amended Answer* (the "Answer"), responding to the *Complaint for (I) Breach of Contract and (II)*

*Turnover of Property of the Debtor's Estate* (the "Complaint"). Where an allegation in the

Complaint is not expressly admitted in this Answer, it is denied.

## PRELIMINARY STATEMENT

1.      The first sentence of ¶ 1 sets forth the Plaintiff's objective in bringing the Complaint and does not require a response.  To the extent it contains factual allegations, they are denied.  The second sentence contains a legal conclusion that does not require a response.  To the extent it contains factual allegations, they are denied.

2.      Paragraph 2 contains a summary of the relief the Plaintiff seeks and does not require a response.  To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3.      The Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional authority on the Bankruptcy Case to adjudicate this dispute.  Any allegations in ¶ 3 not expressly admitted are denied.

4.      The Defendant admits that the Court has statutory (but not Constitutional) jurisdiction to hear this Adversary Proceeding.  Any allegations in ¶ 4 not expressly admitted are denied.

5.      The Defendant denies that a breach of contract claim is core.  The Defendant denies that a § 542(b) turnover proceeding is the appropriate mechanism to collect a contested debt.  The Defendant admits that a § 542(b) turnover proceeding is statutorily core but denies that it is Constitutionally core under *Stern v. Marshall*.  The Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding.  Any allegations in ¶ 5 not expressly admitted are denied.

6.      The Defendant admits ¶ 6 of the Complaint.

## THE PARTIES

7.      The Defendant admits ¶ 7 of the Complaint.

8.     The Defendant admits ¶ 8 of the Complaint.

## CASE BACKGROUND

9.     The Defendant admits ¶ 9 of the Complaint.

10.     The Defendant admits ¶ 10 of the Complaint.

11.     The Defendant admits ¶ 11 of the Complaint.

12.     The Defendant admits ¶ 12 of the Complaint.

## STATEMENT OF FACTS

**A.     The HCMFA Notes**

13.     The Defendant admits that it has executed at least one promissory note under which the Debtor is the payee.  Any allegations in ¶ 13 not expressly admitted are denied.

14.     The Defendant denies ¶ 14 of the Complaint.

15.     The Defendant denies ¶ 15 of the Complaint.

16.     The Defendant denies ¶ 16 of the Complaint.  The document speaks for itself and the quote set forth in ¶ 16 is not verbatim.

17.     The Defendant denies ¶ 17 of the Complaint.  The document speaks for itself and the quote set forth in ¶ 17 is not verbatim.

18.     The Defendant admits ¶ 18 of the Complaint.

**B.     HCMFA's Default under Each Note**

19.     The Defendant admits that Exhibit 3 to the Complaint (the "Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself.  To the extent ¶ 19 of the Complaint asserts a legal conclusion, no response is required, and it is denied. To the extent not expressly admitted, ¶ 19 of the Complaint is denied.

20.     To the extent ¶ 20 of the Complaint asserts a legal conclusion, no response is necessary, and it is denied.  The Defendant otherwise admits ¶ 20 of the Complaint.

21.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 21 of the Complaint and therefore denies the same.

22.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 22 of the Complaint and therefore denies the same.

23.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 23 of the Complaint and therefore denies the same.

24.     The Defendant denies ¶ 24 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

25.     Paragraph 25 of the Complaint is a sentence of incorporation that does not require a response.  All prior denials are incorporated herein by reference.

26.     Paragraph 26 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 26 of the Complaint.

27.     Paragraph 27 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 27 of the Complaint.

28.     Paragraph 28 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 28 of the Complaint.

29.     The Defendant denies ¶ 29 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCMFA Pursuant to 11 U.S.C. § 542(b))

30.     Paragraph 30 of the Complaint is a sentence of incorporation that does not require a response.  All prior denials are incorporated herein by reference.

31.    Paragraph 31 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 31 of the Complaint.

32.    Paragraph 32 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 32 of the Complaint.

33.    The Defendant denies ¶ 33 of the Complaint.

34.    Paragraph 34 of the Complaint states a legal conclusion that does not require a response.  The Defendant admits that the Plaintiff transmitted the Demand Letter.  To the extent ¶ 34 alleges other facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 34 of the Complaint and therefore denies the same.

35.    The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 35 of the Complaint and therefore denies the same.

36.    Paragraph 36 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 36 of the Complaint.

37.    The Defendant denies that the Plaintiff is entitled to the relief requested in the prayer, including parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

38.    At all material times to the Complaint, the Defendant, a registered advisor, advised various third-party funds as to their investments.  One such fund was Highland Global Allocation Fund ("HGAF").

39.    At all material times to the Complaint, the Defendant contracted with the Plaintiff whereby the Plaintiff, through its employees, would provide certain services to the Defendant,

including with respect to the Defendant's advice to the third-party funds. These services so provided included accounting, legal, regulatory, valuation, and compliance services.

40.     In March, 2018, HGAF sold equity interests it held in TerreStar. As part of this, it was necessary to calculate the "net asset value" ("NAV") of these securities and of HGAF assets. The Defendant was responsible for advising on the NAV. In turn, pursuant to the Shared Services Agreement in effect at that time between the Plaintiff and the Defendant, the Plaintiff was responsible to the Defendant to calculate the NAV, and the Plaintiff had several employees charged with these and similar calculations as part of the Plaintiff's routine business services and as part of what the Plaintiff regularly provided to the Defendant and affiliated companies.

41.     The Plaintff made a mistake in calculating the NAV (the "NAV Error"). The NAV Error was discovered in early 2019 as HGAF was being converted from an open-ended fund to a closed-ended fund. The Securities and Exchange Commission opened an investigation, and various employees and representatives of the Plaintiff, the Defendant, and HGAF worked with the SEC to correct the error and to compensate HGAF and the various investors in HGAF harmed by the NAV Error. Ultimately, and working with the SEC, the Plantiff determined that the losses from the NAV Error to HGAF and its shareholders amounted to $7.5 million: (i) $6.1 million for the NAV Error itself, as well as rebating related advisor fees and processing costs; and (ii) $1.4 million of losses to the shareholders of HGAF.

42.     The Defendant accepted responsibility for the NAV Error and paid out $5,186,496 on February 15, 2019 and $2,398,842 on May 21, 2019. In turn, the Plaintiff accepted responsibility to the Defendant for having caused the NAV Error, and the Plaintiff ultimately, whether through insurance or its own funds, compensated the Defendant for the above payments by paying, or causing to be paid, approximately $7.5 million to the Defendant directly or indirectly to HGAF and its investors.

43.    At this time, Frank Waterhouse ("Waterhouse") was the Chief Financial Officer to both the Plaintiff and the Defendant.  Waterhouse signed the two promissory notes the subject of the Complaint (the "Notes").  He did not sign the Notes in any representative capacity for the Defendant.  The Defendant did not authorize Waterhouse to sign the Notes or to bind the Defendant in any way to the Note.

44.    Waterhouse made a mistake in preparing and signing the Notes for the Defendant. Upon information and belief, Waterhouse was not aware that payments from the Plaintiff to the Defendant were to compensate the Defendant for the NAV Error and resulting damages, instead assuming that the Notes were like prior notes between the Plaintiff and the Defendant.  Waterhouse failed to properly inquire into the underlying transaction and, either for unknown accounting or other purposes, Waterhouse prepared and signed the Notes on his own, without proper knowledge of the underlying facts and without actual authority from either the Plaintiff or the Defendant.

45.    In sum, neither the Plaintiff nor the Defendant intended that any funds paid by the Plaintiff to the Defendant be treated as debt but that they instead be treated as compensation by the Plaintiff to the Defendant for the NAV Error that the Plaintiff caused.  The Notes are an unauthorized mistake and a nullity, and are void for a lack of consideration.

46.    To the extent Waterhouse had apparent authority to bind the Defendant to the Notes, such apparently authority does not apply to the Notes because Waterhouse's lack of actual authority is imputed to the Plaintiff, as Waterhouse was the CFO for the Plaintiff.

47.    Accordingly, the Notes are void or unenforceable for lack of consideration, for mutual mistake, and for the lack of authority from the Defendant to Waterhouse to execute the same for the Defendant.

## JURY DEMAND

48.     The Defendant demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

49.     The Defendant does <u>not</u> consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully request that, following a trial on the merits, the Court enter a judgment that the Plaintiff take noting on the Complaint and provide the Defendant such other relief to which it is entitled.

RESPECTFULLY SUBMITTED this 6th day of July, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
_____
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375
drukavina@munsch.com
jvasek@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS,
L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 6th day of July, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the plaintiff.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:21-CV-00881-X |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § § | |
| *Defendant.* | § § | |

### ORDER

Before the Court is a report and recommendation from the United States Bankruptcy Court. [Doc. No. 2 Exhibit 1]. The Bankruptcy Court recommends that this Court grant the defendant's motion to withdraw the reference when the bankruptcy court certifies that this action is ready for trial and defer all pretrial matters to the Bankruptcy Court. The defendant filed a limited objection.[1]

This Court holds that the Bankruptcy Court's familiarity with the facts and the parties make it well-situated to handle pretrial matters in this case. This Court further finds that allowing Bankruptcy Court to handle pretrial filings would further both judicial economy and the important goal of uniformity and efficiency in bankruptcy administration.

---

[1] Doc. No. 5.

1

HCMFA APP 0037

Therefore, this Court **ACCEPTS** the recommendation. This case is hereby **REFERRED** for pretrial management to the United States Bankruptcy Court. When the Bankruptcy Court's concludes this case is ready for trial, that Court should notify this Court, and this Court will then withdraw the reference.

**IT IS SO ORDERED** this 14th day of September, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 21-03004 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. | § | |
| | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S SECOND MOTION FOR LEAVE TO AMEND ANSWER
AND BRIEF IN SUPPORT THEREOF**

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.      SUMMARY ............................................................................................................1

II.     TIMING ..................................................................................................................2

III.    BACKGROUND .................................................................................................4

        A.      THE NOTES, THE ADVERSARY PROCEEDING, AND HCMFA'S DEFENSE..................4

        B.      WATERHOUSE'S DEPOSITION AND ADMISSION OF MISTAKE....................................6

        C.      MR. KLOS' DEPOSITION AND CREATION OF THE NOTES .........................................13

        D.      MS. HENDRIX'S DEPOSITION AND LACK OF AUTHORITY TO SIGN THE NOTES........15

IV.     ARGUMENTS AND AUTHORITIES..........................................................................19

V.      PRAYER...................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)........................................................20, 21

**Statutes and Rules**

TEX. BUS. & COMM. CODE ANN.  3.308(a) ......................................................................................1

TEX. BUS. & COMM. CODE ANN. § 3.402(b) ...............................................................................7

FED. R. CIV. P. 15(a)(2)..................................................................................................20

## DEFENDANT'S SECOND MOTION FOR LEAVE TO AMEND ANSWER AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COMES NOW Highland Capital Management Fund Advisors, L.P. ("HCMFA" or the "Defendant"), the defendant in the above styled and numbered adversary proceeding (the "Adversary Proceeding") commenced by Highland Capital Management, L.P. (the "Debtor"), and files this its *Defendant's Second Motion for Leave to Amend Answer and Brief In Support Thereof* (the "Motion"), respectfully stating as follows:

## I.      SUMMARY[1]

1.      By this Motion, HCMFA requests leave to amend its answer to expressly deny that the Notes were signed. HCMFA does not concede that this relief is required, as it has already denied that it signed the notes—Mr. Waterhouse purportedly signed them as maker. However, the Uniform Commercial Code ("U.C.C.") appears to require a more express denial of signature.[2]

2.      This is not an ordinary note case. The way that the Notes were signed, the fact that they did not go through "legal," the absence of evidence that anyone involved was told that the underlying transfers were loans—accounting personnel *assumed* the transfers to be loans— and the fact that the Debtor was liable to HCMFA for causing a valuation error that led to $7.4 million in liabilities, which was the purpose of the transfers; *i.e.* compensation, all demonstrates that the Notes are a mistake created by Debtor employees in good faith based on their assumptions, and not the facts. Indeed, it is now apparent that Mr. Waterhouse did not sign the Notes or authorize his electronic signature.

---

[1]      This Motion is supported by the *Defendant's Appendix in Support of Second Motion for Leave to Amend Answer*, filed concurrently herewith, and cited to herein as HCMFA APP.

[2]      *See* TEX. BUS. & COMM. CODE ANN. 3.308(a).

3.      This case is an example of how one mistake and assumption snowballs and leads to another, which leads to another, and which leads to yet another, with a plaintiff now seeking to exploit these mistakes—its own mistakes, by the way—rather than looking at the actual facts:

Step 1.      Mr. Dondero went to Mr. Waterhouse and told Mr. Waterhouse to transfer $7.4 million to HCMFA.  Mr. Dondero <u>never</u> told Mr. Waterhouse that this was a loan; just to transfer the funds.  In fact, the transfers were compensation from the Debtor to HCMFA because the Debtor, through its negligence, created a $7.4 million liability of HCMFA to third parties.  Mr. Dondero never told Mr. Waterhouse that the transfers were loans.

Step 2.      Mr. Waterhouse did <u>not</u> have the authority to enter into a loan of this size either for HCMFA or the Debtor.  He simply told his controller to transfer the funds and put the matter out of his head.

Step 3.      That controller, pursuant to a multi-year course of conduct and many other inter-company promissory notes, asked a subordinate to paper the transfers as loans, <u>assuming</u> that they must be loans because intercompany transfers are usually booked as such and the auditors need paper notes.

Step 4.      The subordinate, who is not a lawyer, took a Word document form, years old, and populated it, instead of going through the legal department.  And, instead of asking Mr. Waterhouse to sign the notes, she affixed a .jpg image of his signature to the Notes, <u>without</u> authority from him.

Step 5.      Now that there are notes in the system, and even though none of them know anything about it, accountants and auditors do what they do: they record and report the Notes, thereby breathing life into something that should never have been.

Step 6.      Complicating matters, there were prior promissory notes from HCMFA to the Debtor in the amounts of $6.3 million—similar to $7.4 million—such that persons subsequently reviewing books and records would naturally have assumed that HCMFA's books, which carried the Notes, were referring to these old notes and not something new, such that the mistake was not caught until after this litigation commenced.

## II.    <u>TIMING</u>

4.      NexPoint will first address timing issues, since the Debtor is certain, as it always does, to allege that NexPoint somehow delayed in asserting a right, conveniently ignoring that it had NexPoint's documents, that it had secured an injunction preventing Mr. Dondero from talking

to Debtor employees, and that it had instructed its key employees not to communicate with

HCMFA regarding this litigation.  HCMFA APP 3-6.  The following dates are key:

(i)    April, 2021.  Mr. Sauter interviews Mr. Waterhouse, who basically informs him that, as he did not use electronic signatures in May, 2019, if a note has his signature, then he must have signed it.  *Id*. 7 (¶ 23).  HCMFA at that time has no reason to question this.  *See id*.

(ii)    May 28, 2021.  HCMFA serves a request for production on the Debtor, which includes "[a]ll Microsoft Word copies of the Notes, including Metada."  *Id*. 819.

(iii)    The Debtor does not produce the same.  *Id*. 815 (¶ 5).  As late as October 19, 2021, as HCMFA is deposing Mr. Waterhouse—the person who purportedly signed the Notes—the Debtor is still refusing to produce the original Word documents of the Notes.[3]

(iv)    October 19, 2021.  The Debtor and HCMFA depose Mr. Waterhouse, who testifies that he does not remember signing the Notes and, if he authorized someone to affix his electronic signature to the Notes (even though he was not sure this was being done in May, 2019), then there would be an e-mail from him to an administrative assistant so authorizing.  *See* Discussion, *infra*, at pp. 12-16.

(v)    October 25, 2021.  The Debtor finally produces the original of the Notes.  HCMFA APP 815 (¶ 5).  This confirms that the signature of Mr. Waterhouse is not even an electronic signature, but rather a .jpg image of his signature affixed to the Word version (not even the .pdf version) of the Notes.  *See* Discussion, *infra*, at pp. 20-21.

(vi)    October 27, 2021.  HCMFA deposes Mr. Klos and Ms. Hendrix and learns that Ms. Hendrix affixed Mr. Waterhouse's signature to the Notes, apparently assuming that this was authorized, but without actual authority to do so.  No document authorizing Ms. Hendrix to so do has been produced.  *See* Discussion, *infra*, at pp. 19-23.  *See* HCMFA APP 815 (¶ 6).

5.    Through no fault of HCMFA, it was not until the completion of these depositions

that HCMFA learned that Mr. Waterhouse did not sign the Notes and that he did not authorize his

---

[3]    "John, I also asked you for the Word versions of these notes so we could look at the properties, and you have not provided them.  Are you intending to?

MR. MORRIS:  No."

HCMFA APP 198 (146:12-17).

electronic signature to the Notes.  In that respect, discovery worked as it should, and HCMFA should now have the ability to amend its Answer accordingly.

### III.  BACKGROUND FACTS

#### A.  THE NOTES, THE ADVERSARY PROCEEDING, AND HCMFA'S DEFENSE

6.  On January 22, 2021, the Plaintiff filed its *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* (the "Complaint"), thereby initiating this Adversary Proceeding.  By the Complaint, the Debtor seeks to recover on two demand promissory notes allegedly issued by HCMFA (the "Notes") and signed by Frank Waterhouse ("Waterhouse"): (i) a note dated May 2, 2019 in the amount of $2.4 million; and (ii) a note dated May 3, 2019 in the amount of $5 million.

7.  Each of the Notes, in its body, defines "maker" as HCMFA.  On the signature pares, however, the Notes say:

**MAKER:**

_____

FRANK WATERHOUSE

8.  Mr. Waterhouse does not sign the Notes in any representative capacity, such as "Treasurer" or "Chief Financial Officer."  (Dkt. No. 1 at exh. 1 & 2).

9.  On May 22, 2021, HCMFA filed its *Defendant's Motion for Leave to Amend Answer* (Dkt. No. 32), and on July 2, 2021, the Court entered its *Order Granting Defendant's Motion to Amend* (Dkt. No. 45).  Accordingly, on July 6, 2021, HCMFA filed its *Defendant's Amended Answer* (Dkt. No. 48), asserting various affirmative defenses, including that Waterhouse did not have authority to execute the Notes on behalf of HCMFA and that, therefore, HCMFA did not sign the Notes.  (Dkt. No. 48 at pp. 5-7).

10.     The purpose of this prior amendment was to assert that the Notes were executed by mistake, which is also relevant to the present Motion. Pursuant to a Shared Services Agreement, HCMFA contracted with the Debtor, for pay, for the Debtor to provide various valuation services to HCMFA as it advises various funds. HCMFA APP 13-25. The Debtor made a mistake relating to a valuation issue for one of those funds, Highland Global Allocation Fund, and specifically the valuation of TerreStar. *Id*. 325-330 (273:10-278:13). This mistake led to liability at HCMFA of $7.4 million. *See id*. It is HCMFA's position that this was the Debtor's liability under the Shared Services Agreement, as the Debtor breached the standard of care and its duties as specified in the agreement. *See, e.g., id*. 18 (§ 6.01). Soon thereafter, as HCMFA needed money (both to pay the remaining portion of that liability and to pay a $5 million consent fee to the investors of a fund), Highland transferred these sums ($7.4 million) to HCMFA. *Id*. 334-35 (282:24-283:5). This was done at the direction of Mr. Dondero, who believed that it was proper for Highland to transfer these funds to compensate HCMFA for Highland's valuation error, and not as a loan from the Debtor to HCMFA.[4] HCMFA APP 334-35 (282:12-283:7).

11.     As detailed below, that is when the errors and assumptions began: The Debtor's (and HCMFA's) Chief Financial Officer, Frank Waterhouse ("Waterhouse"), perhaps assumed that, when Mr. Dondero told him to transfer the funds, it was a loan, even though Mr. Dondero never told him that it was a loan; the Debtor's controller, David Klos ("Klos"), when told to transfer the funds by Mr. Waterhouse, assumed that this was a loan and assumed that promissory notes should be prepared; and Kristin Hendrix ("Hendrix"), Mr. Klos' subordinate, prepared the Notes as instructed by Mr. Klos, and purported to electronically sign Mr. Waterhouse's name to

---

[4]     This is further evidenced because the source of the funds that the Debtor used to pay HCMFA came from funds paid into the Debtor by Mr. Dondero. Clearly Mr. Dondero knew what was going on, and clearly he intended the subsequent transfer to be compensation. Otherwise he could have just transferred funds to HCMFA directly.

the Notes.  All of these individuals, in the accounting group and not the legal group, simply assumed that funds flowing from the Debtor to HCMFA must be loans, and therefore that the loans must be "papered up" for accounting and audit purposes, as had been done many, many times in the prior fifteen years.

12.    The Debtor will point out instances where HCMFA carried the Notes as liabilities on its books and records.  There is evidence of that, but there is also evidence otherwise.  That is not conclusive, however, or even necessarily persuasive to the jury—of course the same accounting personnel who *assumed* that the transfers were loans would then carry the resulting (mistaken) Notes on the books and records.

**B.**    <u>WATERHOUSE'S DEPOSITION AND ADMISSION OF MISTAKE</u>

13.    As noted, Mr. Waterhouse signed the Notes as "maker."  Certainly, his signature does not indicate any representative capacity such as "treasurer" or as "CFO."  In the body of the Notes, "Maker" is defined as HCMFA.  Thus, there is ambiguity and, more importantly, *prima facie* liability for Mr. Waterhouse.

14.    Here, the Texas U.C.C. contemplates this potential and directly applies, providing as follows:

(1) If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.

(2) Subject to Subsection (c), the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument if (i) the form of the signature does not show unambiguously that the signature is made in a representative capacity, or (ii) the represented person is not identified in the instrument. With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.

TEX. BUS. & COMM. CODE ANN. § 3.402(b). The comments to the U.C.C. explain with an analogous situation:

> Case # 3. The name "Richard Roe" is written on the note and immediately below that name Doe signs "John Doe" without indicating that Doe signed as agent.
>
> In each case Doe is liable on the instrument to a holder in due course without notice that Doe was not intended to be liable. In none of the cases does Doe's signature unambiguously show that Doe was signing as agent for an identified principal. A holder in due course should be able to resolve any ambiguity against Doe.
>
> But the situation is different if a holder in due course is not involved. In each case Roe is liable on the note. Subsection (a). If the original parties to the note did not intend that Doe also be liable, imposing liability on Doe is a windfall to the person enforcing the note. Under subsection (b)(2) Doe is prima facie liable because his signature appears on the note and the form of the signature does not unambiguously refute personal liability. But Doe can escape liability by proving that the original parties did not intend that he be liable on the note. This is a change from former Section 3-403(2)(a).

U.C.C. cmt. 3.

15. Mr. Waterhouse was asked at length about his potential personal liability on the Notes:

> Q. Okay. But back then when you signed this, did it ever cross your mind that you were the maker on these notes?
>
> A. No.
>
> Q. Back then when you signed this document, did it ever cross your mind that you could be a co-obligor on these notes?
>
> A. No. I didn't receive $7.4 million, I mean...
>
> \*        \*        \*
>
> Q. So putting all other issues aside, if the law -- if the law says that you were liable for those notes because of how you signed them, then would you agree with me that these notes are a mistake?
>
> MR. MORRIS: Objection to the form of the question.
>
> MS. DANDENEAU: Objection to the form.

A.    Yes.

HCMFA APP 357-59 (305:16-307:4).

16.    Given that the law makes Mr. Waterhouse *prima facie* liable for the Notes, even though that was not his intention, the Notes are a mistake and Mr. Waterhouse admitted that they are a mistake.  More to the point however, Mr. Waterhouse testified extensively regarding whether he signed (or did not sign) the Notes.  This is important because, when HCMFA first interviewed Mr. Waterhouse regarding the Notes (once he was no longer prohibited by the Debtor from communicating with HCMFA regarding litigation matters), Mr. Waterhouse stated that, if the Notes bear his signatures, then he must have signed them as he did not use an electronic signature in May, 2019.  HCMFA APP 7 (¶ 23).  In other words, even though HCMFA had reason to believe that the Notes were a mistake, it had no reason at that time to believe that Mr. Waterhouse did not actually sign the Notes.

17.    This changed when HCMFA deposed Mr. Waterhouse on October 19, 2021.  The deposition began with Mr. Waterhouse repeatedly testifying that he did not recall signing the Notes, even though the signatures were his.  "I don't recall specifically signing this, but this is my signature."  HCMFA APP 193 (141:4-7).  In other words, as he had told HCMFA in April, 2021, given that the signature is his, he must have signed the Notes.  As detailed below, however, once Mr. Waterhouse reviewed the Notes and confirmed that they contain his electronic signatures, it became clear that he did not sign the Notes and, equally as importantly, that he did not authorize his electronic signature to the Notes.

18.    First, Mr. Waterhouse confirmed some background facts.  He confirmed that he, as the CFO for the Debtor and an officer of HCMFA, would not have had the authority on his own to cause the Debtor to lend, or HCMFA to borrow, $7.4 million [subject to objection].  Only Mr.

Dondero would have had that authority [subject to objection].  HCMFA APP 322-25 (270:18-273:9).  Mr. Waterhouse admitted that, as a result of the TerreStar valuation error, shareholders in funds advised by HCMFA had damages of between $7 and $8 million.  *Id*. 329-30  (277:7-278:13).  Mr. Waterhouse confirmed that Mr. Dondero told him to transfer funds from the Debtor to HCMFA:

> I testified earlier, that I had a conversation with Mr. Dondero for -- for these amounts attributable to – it was either the error -- you know, the error, and in that conversation he said, go get the money from Highland.

*Id*. 334-35 (282:24-283:5).

19.     Critically, Mr. Waterhouse could not remember if Mr. Dondero told him this was a loan.  *Id*. 336 (284:4-6).  Mr. Waterhouse did not remember if Mr. Dondero told him to have promissory notes prepared.  *Id*. 336 (284:18-20).  Regarding the genesis of the Notes, Mr. Waterhouse testified:

> Q. Okay. And would you have signed two promissory notes obligating HCMFA to pay Highland $7.4 million without Mr. Dondero's prior knowledge and approval?
>
> MS. DEITSCH-PEREZ:  Object to the form.
>
> A. You know, from -- from what I recall around these notes, you know, I don't recall specifically Mr. -- Mr. Dondero saying to – to make this a loan.  So my conversation with Mr. Dondero around the culmination of the NAV error as related to TerreStar which was a -- a – I think it was a year and a half process. I don't know, it was a multi-month process, very laborious, very difficult. When we got to the end, I had a conversation with Mr. Dondero on where to, you know, basically get the funds to reimburse the fund, and I recall him saying, get the money from Highland.
>
> Q. And so he told you to get the money from Highland; is that right?
>
> A. That is what I recall -- in my conversation with him, that is -- that is what I can recall.

HCMFA APP 196-97 (144:14-145:22). Asked if he would disagree with Mr. Dondero that Mr. Dondero never told him to make the transfers loans, Mr. Waterhouse testified [subject to objection]: "all I recall is he said, get the money from Highland." *Id*. 370 (318:3-10). Continuing:

> And you don't remember discussing with Mr. Dondero what the terms of those two promissory notes should be?
>
> A. I don't recall -- I testified all I recall is he said, get the money from Highland. I don't -- the -- the terms of the note, I don't recall ever having a discussion around the terms of the note, but since I don't draft the notes, that -- there could have been a conversation with other people later.

*Id*. 371 (319:7-16).

20.     When asked whether it was possible that, "when Mr. Dondero told you to transfer the funds from Highland, you just assumed on your own that those would be loans without him actually telling you that those would be loans," Mr. Waterhouse testified [subject to objection] that "I don't know." HCMFA APP 339 (287:4-13). Asked again whether, seeing $7.4 million being transferred out of the Debtor, whether it is possible that he assumed this to be a loan, Mr. Waterhouse answered [subject to objection]:

> I don't know. As I testified earlier, I had conversations with Mr. Dondero about -- about the -- the -- the moneys that were needed for the NAV error. And I recall him saying go get it from Highland -- or get it from Highland.

*Id*. 340-41 (288:19-289:8). In fact, Mr. Waterhouse confirmed that it was on his "initiative" to have the Notes drafted [subject to objection]. *Id*. 342 (290:4-16). And, Mr. Waterhouse believed that the legal team would be involved with drafting the notes. *Id*. 342 (290:15-16).

21.     Mr. Waterhouse did not recall if the Notes were presented to him on paper form to sign. *Id*. 344-45 (292:14-293:17). Mr. Waterhouse testified:

> I signed very few documents via email. I can't say that it never happened, but people either stopped by my office and physically walked in documents for signature that we discussed face-to-face.

*Id*. 345-46 (293:25-294:5). And, before signing documents, Mr. Waterhouse would usually have

the legal department or the compliance department sign off on the document. *Id*. 346-348 (294:16-

296:7). When asked again if he remembered signing the Notes, Mr. Waterhouse testified [subject

to objection]:

> They would -- they would have been presented physically on paper most likely or
> someone would have left it. But, I mean, again, I don't -- I don't recall."

*Id*. 348 (296:8-18). And, Mr. Waterhouse confirmed that, back then, he used an "ink pen" to sign

documents, as he told HCMFA in April, 2019. *Id*. 348 (296:19-25).

22. When presented with the Notes and asked whether he believed that he ink-signed

them, Mr. Waterhouse answered:

> These -- these -- these signatures are identical, now that I stare at them, and I mean,
> they are so close -- I mean, they're identical that, I mean, even with my chicken
> scratch signature, I don't know if I can – you know, I do this 100 times, could I do
> that as -- as precisely as I see between the two notes.

*Id*. 350 (298:2-17). Pressed further regarding whether he "actually signed either or both

notes":

> Is -- I don't -- I don't recall specifically. As I said before, my assistant did have a
> -- an electronic signature, and that was used from time to time. It wasn't as common
> practice back in 2019. It definitely was more common practice when we had to
> work from home and remotely for COVID because it that made it almost impossible
> to, right, provide wet signatures since we're all working from home remotely.
>
> Q. Well, going just for these two promissory notes, Mr. Waterhouse, in light of
> your inability to remember any details, are you sure you actually signed either or
> both of those notes?
>
> MS. DANDENEAU: Objection to form.
>
> A. I don't recall specifically signing -- actually physically signing these notes. As
> I said before, I don't recall doing that. This -- this looks like my signature, but yet
> these two signatures are identical.
>
> Q. So you don't recall physically signing them, and I take it you don't recall
> electronically signing them either?

A. I don't recall. You know, Highland has all my emails. If that occurred, you know, you know, I don't have any of these records is what I'm saying. I don't have any of those records.

*Id*. 350-52 (298:300:4).

23.     Regarding the possibility that Mr. Waterhouse electronically signed the Notes, as

rare as that may have been in May, 2019, Mr. Waterhouse testified as follows:

And help me here. I'm not very technologically astute. When you -- and I – I recognize that you do it rarely, but when you sign a document electronically, do you believe that there is an electronic record of you having authorized or signed a document electronically?

MR. MORRIS:  Objection to the form of the question.

I -- I don't know the tech answer to that, but, you know, since I don't have – I don't ever attach my signature block electronically, my assistant would have done that, and if that is done over email like we did several times -- you know, multiple, multiple times over COVID, she would attach my signature block and then email it out to whatever party.

 Q.     What was your assistant's name in May 2019?

 A.     It was Naomi Chisum.

 Q.     Is she the only one?  I'm sorry, was she your only assistant that would have maybe facilitated logistically something like you just described?

A.     You know, she was out on maternity leave at some point. I don't -- I don't recall those dates where she was out for maternity leave. There was -- there were folks backing her up. I don't recall specifically who those -- who those, you know, administrative assistants were, and I don't recall specifically if she was out during this time on maternity leave.

*Id*. 372-73 (320:11-321:20).

24.     Aside from providing valuable testimony regarding the genesis of the Notes, for

purposes of the present Motion Mr. Waterhouse testified: (i) that he does not remember signing

the Notes in person or electronically; (ii) he rarely signed documents in May, 2019 electronically;

(iii) he would have expected that documents he signed were approved by the legal department; (iv)

the Notes strongly appear to be signed electronically; and (v) if signed electronically, he would

have sent an e-mail authorizing the same. Interestingly, he also testified that it would have been his "assistant" to sign his name electronically; not Ms. Hendrix, a mid-level manager and not an "administrative" assistant.

25. No such e-mail authorizing Mr. Waterhouse's electronic signature has been produced by the Debtor. HCMFA APP 815 (¶ 6).

## C.     MR. KLOS' DEPOSITION AND CREATION OF THE NOTES

26. HCMFA deposed Mr. Klos on October 27, 2021. In May, 2021, Mr. Klos was the controller for the Debtor. HCMFA APP 661 (8:11-13). It is Mr. Klos who directed Ms. Hendrix to prepare the Notes. *Id*. 721 (68:4-13). Mr. Klos discussed how funds would be transferred from one affiliated entity to another as needed for liquidity:

> And you joined Highland in 2009. From that point in time, 2009, through 2019, was there any practice at the enterprise of those businesses to transfer funds between each other on a basis of when one needed it and one had it?
>
> A. Yes, that was a fairly, generally speaking, that was a fairly common practice, of using different entities within the overall structure to bridge liquidity.

*Id*. 682-83 (29:24-30:7). Klos also testified as to the standard practice that, where the Debtor was transferring funds out, the transfer would be booked as a loan:

> So over the general -- talking about generally now, over those 10 years when there were these intercompany transfers for liquidity purposes, how were they booked by the debtor, by Highland Capital Management?
>
> MR. MORRIS: Objection to the form of the question.
>
> THE WITNESS: Help me on the direction. So this is money that Highland is receiving or money that Highland is sending?
>
> Q. (BY MR. RUKAVINA) Sending out.
>
> A. Sending out. So this is -- in the scenario that you're describing, this money that Highland is sending out to meet some other corporate obligor's liquidity needs?
>
> Q. Yes, sir.

A. So those would be booked as a loan. I would -- I need to hedge a little bit because I'm not a hundred percent certain, but I would say if not exclusively via loans close to exclusively.

Q. And would they -- strike that. Would they usually be papered up with a promissory note?

A. Yes.

Q. Now, why was that the general course during 10 years? Was there a policy and procedure in place, or would Dondero say book it as a loan, or was that just the right thing to do from an accounting perspective?

MR. MORRIS: Objection to the form of the question.

THE WITNESS: At the end of the day it's at the direction of Jim Dondero, so I can't tell you exactly why he wanted it to be done that way. But that was certainly the practice of how it was done in those situations.

*Id.* 685-87 (32:20-34:5).

27. Thus Mr. Klos believed that the underlying transfers were loans, in part because he believed that Mr. Waterhouse would have told him that (but could not recall for certain), and in part because of past practice. *Id.* 722-23 (69:1-70:14). Mr. Klos described the usual course at the Debtor with respect to papering intercompany loans:

Q. (BY MR. RUKAVINA) So going back to this Exhibit 3, sir, why did you ask Kristin, can you or Hayley please prep a note for execution? Why them? Remember, I was asking about what the course or procedure was at that point in time.

A. Yeah, so nomenclature, procedure, process. I would say the informal process for these types of loans, they were frequent in nature, would be for someone on the corporate accounting team to prepare a note and have it executed.

Q. Okay. That was the standard course back then?

A. Again, I don't know what standard course means. That was fairly typical.

Q. Why would you not have asked someone in the Highland legal department to prepare a note?

A. Because this was a legally reviewed document as far as the form of the agreement. It's a one-page, two-paragraph form that had been used for a long time.

So the only thing that would change with respect to these notes would be the date, the amount, likely the rate. I can't think of anything else offhand that would have changed from note to note.

Q. After you asked Ms. Hendrix to prepare this note, did you have any further role with respect to the papering, preparation, or execution of that note?

A. Not that I can remember.

Q. Would you have had any role in having either or both of the notes actually signed electronically or by ink by Mr. Waterhouse?

A. Likely not, no.

*Id*. 736-37 (83:19-84-24).

28.     The point is simple: when professional accountants at the Debtor saw funds flowing from the Debtor to an affiliate, such as HCMFA, they *assumed* that the funds were a loan and papered it as such, as this is how it had been done for many years on many occasions.

**D.     MS. HENDRIX'S DEPOSITION AND LACK OF AUTHORITY TO SIGN THE NOTES**

29.     HCMFA deposed Ms. Hendrix on October 27, 2021.  In May, 2019, Ms. Hendrix was the senior accounting manager at the Debtor.  HCMFA APP 461 (12:4-16).  At that time, she reported to Mr. Klos, who reported to Mr. Waterhouse.  *Id*. 461-62 (12:25-13:9).  While Ms. Hendrix never drafted a promissory note from scratch, in May, 2019, part of her job was taking a form note and revising it.  *Id*. 466 (17:5-11).  At that time, it was the corporate accounting group at the Debtor, not the legal group, that was responsible for updating draft promissory notes so as to create new ones.  *Id*. 466 (17:20-25).  As Ms. Hendrix testified:

Our typical practice is if we have a loan with certain affiliates that it's a demand note. We have a template that we have used for years that was created by either our internal legal team or an outside law firm, I'm not sure which.  The typical practice is always updating a few things on that template, getting it executed, and filing it in our audit folders.

*Id*. 467 (18:18-25). The corporate accounting group, not the legal group, did this "updating." *Id*. 468-69 (19:1-13; 20:1-5). And Ms. Hendrix confirmed the general purpose of the intercompany notes:

> Typically anytime specifically Jim Dondero would need to move money between related parties, he would pay down -- when I say him, he would have us in corporate accounting move money around, pay off notes, reissue new notes somewhere else. So a way to move money around between his entities.

*Id*. 470 (21:10-16). Stated differently, at that time "it's all one big happy family, and whoever needed cash, the cash moved around." *Id*. 472 (23:3-6).

30. In May, 2019, Mr. Klos sent one or two e-mails to Ms. Hendrix—emails on which Mr. Waterhouse but not Mr. Dondero or the legal department were copied—informing her that there were new intercompany loans and asking her to prepare notes for execution. *Id*. 481-82 (32:13-33:4). This instruction comported with the general practice:

> So is it fair to say that typically, obviously not every time, but typically your corporate accounting group when it would see intercompany transfers in large amounts would believe that they were loans?
>
> MR. MORRIS: Objection to the form of the question.
>
> THE WITNESS: Typically they were loans. There's not really another way to get money from one entity to another. And if they were papered as a loan, that means we were told to set it up that way.

*Id*. 484 (35:5-15). That is "how it was for 14 or 15 years." *Id*. 485 (36:7-9).

31. Ms. Hendrix confirmed that the $2.4 million Note was "related to a TerreStar NAV error" and the $5 million Note was for the "consent fee." *Id*. 487-88 (38:17-39:5). Ms. Hendrix was never "told to [her] directly" that the funds were a loan, but she [subject to objection] "assum[ed] that based on many instances of intercompany transfers in the 14 years prior." *Id*. 489 (40:20-25).

32.    Ms. Hendrix confirmed that she prepared the Notes from Word documents originally created by outside counsel.  *Id*. 491 (42:15-43:20).  However, Ms. Hendrix had no memory of papering the Notes.  *Id*. 494 (45:21-46:1).  It would have been her practice to not consult the legal group in preparing the Notes.  *Id*. 495 (46:12-24).  Ms. Hendrix confirmed that, to sign Mr. Waterhouse's name to the Notes, she used an electronic picture of his signature, which she then affixed to the Word documents, the same as the undersigned counsel does below:

33.    On the question of whether Mr. Waterhouse authorized Ms. Hendrix to affix his signature to the Notes, Ms. Hendrix testified "I don't have exact specific memory."  *Id*. 497 (48:10-15).  Again, she appears to have assumed that Mr. Waterhouse must have approved the Notes and, therefore, her using his signature:

> He was fine with using his e-signature, and what is on these documents was that exact e-signature.
>
> *            *            *
>
> But he would have had to approve this loan in the dollar amount, the day. He would have been the one directing us to create these loans.  In past practice he has always approved using his e-signature to execute documents.

*Id*. 497(48:4-18).  When pressed about *how* Mr. Waterhouse would have authorized his electronic signature to be used, Ms. Hendrix testified as follows [subject to objection]:

> I would assume that, as I've stated previously, these directions were coming directly from him to paper a loan.  These changes that are made are only to the dollar amount.  Interest rate is pulled right off the IRS website.  That is his approval to paper a loan and in fact execute or approve the loan.

*Id*. 497-98 (48:24-49:5).

34.     Then, when asked [subject to objection] "after his e-signature was used either on these notes or other documents in May of 2019, would you have brought the documents back to him for any kind of verification," Ms. Hendrix testified:

> Probably not.  These are all very standard.  We've papered hundreds of loans.  So I think he trusted that we can handle updating a date and a dollar amount on these loan templates.

*Id*. 499 (50:1-9).

35.     Ms. Hendrix also testified [subject to objection], differently from Mr. Waterhouse, that "[p]robably at this time, 99 percent of the stuff my team got his signature on was his e-signature." *Id*. 498 (49:12-16).  And, the following exchange is significant:

> Q. (BY MR. RUKAVINA) Do you know or believe, or your recent review of documents, did it reveal an email from Mr. Waterhouse to you specifically authorizing his e-signature on Exhibits 4 and/or 5?
>
> A. Not that I recall seeing, no.
>
> Q. Sitting here today, do you have any memory of Mr. Waterhouse orally or otherwise specifically authorizing you to affix his e-signature to Exhibits 4 and/or 5?
>
> A. Specifically on these loans, no, I don't recall those conversations.  But, again, our practice has always been we have this discussion, he's under the understanding that we're going to paper the loans, he's always comfortable with using his e-signature.  This is not something me or my team would have done without that authority and approval from him.

*Id*. 499 (50:15-25).

36.     And, there is no evidence that Ms. Hendrix ever showed the Notes to Waterhouse after preparing them:

> Q. Sitting here today, do you have any memory of giving Mr. Waterhouse these two promissory notes after they were prepared?
>
> A. I specifically don't remember walking into his office and providing it to him, but he could have found it on our shared drive if he wanted to.

Q. Do you have any memory or in your recent review of documents did you see any email to the effect of you sending either or both of these promissory notes to Mr. Waterhouse after they were papered up?

A. I don't have any specific recollection, again, but he had access to look at them.

Q. On the shared drive?

A. Yes.

*Id*. 503 (54:4-17). Scanning in the Notes and then saving them to the system, is hardly a substitute for showing or giving them to the man who is personally liable on them to the tune of $7.4 million.

37.     Ms. Hendrix *assumed* that the transfers were loans and *assumed* that Mr. Waterhouse authorized her to affix his signature to the Notes because she *assumed* that he approved of the Notes. But her testimony directly conflicts with his: whereas he testified that he rarely used electronic signatures in May, 2019, and would have had to send an e-mail authorizing the same, and would have expected that the legal department would approve a note prior to his signature, she testified that he routinely did this at that time pursuant to some generalized authority and that the accounting department routinely papered notes.

38.     The fact remains that, notwithstanding her good faith, Ms. Hendrix created erroneous notes (as they appear to make Mr. Waterhouse the "maker" and to make him jointly and severally liable), and she was not authorized—at least there is no evidence that she was authorized—to affix images of Mr. Waterhouse's signature to the Notes or, if there was some generalized authority that she believed Mr. Waterhouse gave her, then the condition precedent— that the legal department approve the Notes—was not satisfied.

## IV.     <u>ARGUMENTS AND AUTHORITIES</u>

39.     This Motion is necessarily driven by the facts; hence the lengthy discussion of recent discovery proceedings above. From those facts, the following sequence emerges:

(i)     Mr. Dondero told Mr. Waterhouse to transfer the fuds, and Mr. Waterhouse does not recall Mr. Dondero telling him that this was a loan, perhaps assuming this to be the case.

(ii)    Mr. Waterhouse told Mr. Klos to process the transfers, and perhaps he also told him that the funds are a loan. Either way, pursuant to standard practice, Mr. Klos believed that the funds were a loan and instructed others to paper up the Notes, without any instruction from Mr. Dondero that the transfers were a loan.

(iii)   Ms. Hendrix then, again pursuant to standard practice, took an old form for a note and populated it with new details and created the Notes.

(iv)    Mr. Waterhouse did not sign the Notes. Instead, Ms. Hendrix affixed pictures of his signature on the Notes. She did not then provide the Notes to him.

(v)     There is no evidence that Mr. Waterhouse authorized Ms. Hendrix to do so. Neither Mr. Waterhouse nor Ms. Hendrix remembers any such express authorization. Moreover, Mr. Waterhouse confirmed that, if he authorized an electronic signature, he would have e-mailed such authority to his administrative assistant. Ms. Hendrix was not his administrative assistant. And, Mr. Waterhouse confirmed that he would only sign a note if the legal department approved the note, which did not occur here.

40.     HCMFA therefore submits that Ms. Hendrix, in good faith and acting pursuant to an established course and pattern, was not authorized to affix Mr. Waterhouse's signature to the Notes. Instead, she *assumed* that, as Mr. Waterhouse had authorized the Notes, she was authorized to sign them for him. And, despite Mr. Waterhouse's expectations, none of this went through the legal department. Hence the result, where Mr. Waterhouse signed as "maker" and is *prima facie* jointly liable, something that he confirmed was a mistake. But it is the same note—if that is a mistake, then so is the whole note.

41.     Importantly, the Scheduling Order does not provide for a deadline to seek leave to amend the operative pleadings. *See* Docket No. 67. This means that, unlike the heightened "good cause" standard under Rule 16, the more lenient standard of Rule 15 applies to this Motion. That rule provides that "[t]he court should freely give [leave] when justice so requires." FED. R. CIV. P. 15(a)(2). The Court must "possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The Fifth Circuit has outlined five

"considerations" guiding the Rule 15 inquiry: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id*.

42.     There has been no undue delay.  As discussed above and evidenced with the Appendix, HCMFA did not know that Mr. Waterhouse did not sign the Notes until his deposition, as he had previously told HCMFA that he assumed he must have signed the Notes since the Notes bear his signature.  It is the Debtor who delayed in producing the original Notes, requested in May, 2021, until late October, 2021, going so far as to even say that it would not produce the originals on October 19, 2021 (a decision which, to its credit, it subsequently reversed).  Had the Debtor produced the originals in May or June, as requested, it would have been obvious that the signatures were electronic signatures, and perhaps HCMFA would have reasonably questioned any authority to sign, but this did not happen due to the Debtor' delay.  And, it was not until HCMFA deposed Mr. Waterhouse, Ms. Hendrix, and Mr. Klos that the facts were learned.  There is nothing that HCMFA could have done to expedite this process.  On the contrary, discovery worked as it should have.

43.     There is no bad faith or dilatory motive.  All of HCMFA's defenses are made in good faith and are supported by the evidence.  That evidence may be subject to dispute and to contradictory evidence, but then that is the point of a trial.  Certainly, there is enough testimony and evidence to support the defense that Mr. Waterhouse did not sign the Notes or authorize their signing.  Nor is HCMFA trying to "weasel" its way out of a debt: the Debtor, through its negligence, caused a $7.4 million liability to HCMFA.  It was just and proper for the Debtor to compensate HCMFA, which it did.  None of this is "invented" after the fact or presented in bad faith.

44.     There are no repeated failures to cure deficiencies.  True, this is the second motion to amend the answer.  But, the first motion was necessitated by the simple fact that HCMFA did not have access to its books and records (then still under the control of the Debtor), and the Debtor had prohibited its employees, including Mr. Waterhouse, from discussing litigation matters with HCMFA.  In many ways, that first motion should not have to count against HCMFA.  Either way, for the same reasons as discussed above with respect to timing, HCMFA did not know and could not have known about this defense until the end of October, 2021, meaning that there was no prior "deficiency" to now cure.

45.     There is no undue prejudice to the Debtor.  Trial is not set.  All of the people with knowledge of the Notes have been deposed, and if the Debtor needs additional discovery, then it can readily take it.  The Debtor certainly believes that it already has strong arguments as to why HCMFA's defenses have no merit, as it will no doubt present in opposition to this Motion.  And, as the Debtor has had possession of the originals of the Notes all of this time, and as Ms. Hendrix and Mr. Klox are still the Debtor's employees, as was Mr. Waterhouse through February, 2021, none of what is stated in this Motion should come as a surprise to the Debtor, as much as the Debtor may disagree with HCMFA's position and arguments.

46.     Finally, the amendment is not futile.  Texas law provides for a recognized defense when a promissory note is not signed.  *See* TEX. BUS. & COMM. CODE ANN. § 3.401(a).

47.      Mr. Waterhouse, Mr. Klos, and Ms. Hendrix have each given testimony that raises serious doubt regarding whether Mr. Waterhouse actually signed the Notes or authorized his electronic signature—something that the Court cannot adjudicate at this stage.  The Debtor will have every opportunity to argue at trial why the defense is wrong, and it will have every opportunity to present its evidence.

48. Accordingly, as no substantial reason exists to deny the amendment, and the interests of justice support freely granting leave, the Court should grant leave to the Defendant to amend its Answer.

## V. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, HCMFA respectfully requests that the Court enter an order: (i) granting this Motion; (ii) granting HCMFA leave to file the Amended Answer attached hereto as Exhibit "A"; and (iii) granting HCMFA such other and further relief to which it may be justly entitled.

RESPECTFULLY SUBMITTED this 30th day of November, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
_____
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he discussed the relief requested herein with John Morris, Esq., counsel of record for the Debtor, who informed the undersigned that the Debtor opposes said relief.

/s/  Davor Rukavina
Davor Rukavina

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 30th day of November, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Plaintiff through its counsel of record.

/s/  Davor Rukavina
Davor Rukavina

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § |
| | §   Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § |
| | §   Case No. 19-34054-sgj11 |
| Debtor. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Plaintiff, | §   Adversary Proceeding No. |
| | § |
| vs. | §   21-03005 |
| | § |
| NEXPOINT ADVISORS, L.P., JAMES | § |
| DONDERO, NANCY DONDERO, AND THE | § |
| DUGABOY INVESTMENT TRUST, | § |
| | § |
| Defendants. | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

HCMFA APP 0066

**AMENDED COMPLAINT FOR (I) BREACH OF CONTRACT,
(II) TURNOVER OF PROPERTY, (III) FRAUDULENT TRANSFER, AND (IV)
BREACH OF FIDUCIARY DUTY**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor") in the above captioned chapter 11 case (the "Bankruptcy Case"), and the plaintiff (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary Proceeding") by its undersigned counsel, as and for its amended complaint (the "Complaint") against defendants NexPoint Advisors, L.P. ("NPA"), James Dondero ("Mr. Dondero"), Nancy Dondero ("Ms. Dondero"), and The Dugaboy Investment Trust ("Dugaboy" and together with NPA, Mr. Dondero, and Ms. Dondero, the "Defendants"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

## PRELIMINARY STATEMENT

1.      The Debtor brings this action against Defendants in connection with NPA's default under a promissory note executed by NPA in favor of the Debtor in the original principal amount of $30,746,812.33, and payable in annual installments. NPA has failed to pay amounts when due under the Note (as defined below), the Note is in default, and the amounts due under the Note have been accelerated pursuant to the terms of the Note.

2.      In paragraph 42 of NPA's *First Amended Answer* [Docket No. 34-3], NPA contends that the Debtor orally agreed to relieve it of the obligations under the notes upon fulfillment of "conditions subsequent" (the "Alleged Agreement"). NPA further contends that the Alleged Agreement was entered into between James Dondero, acting on behalf of NPA, and his sister, Nancy Dondero, as representative of a majority of the Class A shareholders of the Plaintiff, including Dugaboy (the "Representative"), acting on behalf of the Debtor. At the time Mr.

2

HCMFA APP 0067

Dondero entered into the Alleged Agreement on behalf of NPA, he controlled both NPA and the Debtor and was the lifetime beneficiary of Dugaboy.

3. Based on its books and records, discovery to date, and other facts, the Debtor believes that the Alleged Agreement is a fiction created after the commencement of this Adversary Proceeding for the purpose of avoiding or at least delaying paying the obligations due under the Note.

4. Nevertheless, the Debtor amends its Complaint to add certain claims and name additional parties who would be liable to the Debtor if the Alleged Agreement were determined to exist and be enforceable. Specifically, in addition to pursuing claims against NPA for breach of its obligations under the Note and for turnover, the Debtor adds alternative claims (a) against NPA for actual fraudulent transfer and aiding and abetting Dugaboy in its breach of fiduciary duty, (b) against Dugaboy for declaratory relief and for breach of fiduciary duty, and (c) against Nancy Dondero for aiding and abetting Dugaboy in the breach of his fiduciary duties.

5. As remedies, the Debtor seeks (a) damages from NPA in an amount equal to (i) the outstanding principal due under the Note (as defined below), plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the Note), for NPA's breach of its obligations under the Note, (b) turnover by NPA to the Debtor of the foregoing amounts; (c) avoidance of the Alleged Agreement and the transfers thereunder and recovery of the funds transferred from the Plaintiff to, or for the benefit of, NPA pursuant to the Note; (d) declaratory relief, and (e) damages arising from the Defendants' breach of fiduciary duties or aiding and abetting thereof.

HCMFA APP 0068

## JURISDICTION AND VENUE

6.      This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

10.      The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

11.      Upon information and belief, NPA is a limited partnership with offices located in Dallas, Texas, and organized under the laws of the state of Delaware.

12.      Upon information and belief, Mr. Dondero is an individual residing in Dallas, Texas.  He is the co-founder of the Debtor and was the Debtor's President and Chief Executive Officer until his resignation on January 9, 2020.  At all relevant times, Mr. Dondero controlled NPA; Mr. Dondero also controlled the Debtor until January 9, 2020.

13.      Upon information and belief, Dugaboy is (a) a limited partner of the Debtor, and (b) one of Mr. Dondero's family investment trusts for which is he a lifetime beneficiary.

HCMFA APP 0069

14.     Upon information and belief, Nancy Dondero is an individual residing in the state of Florida and who is Mr. Dondero's sister, and a trustee of Dugaboy.

## CASE BACKGROUND

15.     On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

16.     On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund ("Redeemer"), (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis Capital Management, L.P. and Acis Capital Management GP LLC (collectively, "Acis").

17.     On June 25, 2021, the U.S. Trustee in this Court filed that certain *Notice of Amended Unsecured Creditors' Committee* [Docket No. 2485] notifying the Court that Acis and Redeemer had resigned from the Committee.

18.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

19.     The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

---

[2] All docket numbers refer to the main docket for the Debtor's Case maintained by this Court.

HCMFA APP 0070

## STATEMENT OF FACTS

**A.**     **The NPA Note**

20.     NPA is the maker under a promissory note in favor of the Debtor.

21.     Specifically, on May 31, 2017, NPA executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $30,746, 812.33 (the "<u>Note</u>").  A true and correct copy of the Note is attached hereto as **<u>Exhibit 1</u>**.

22.     Section 2 of the Note provides: "**<u>Payment of Principal and Interest</u>**.

Principal and interest under this Note shall be due and payable as follows:

> **2.1**     **<u>Annual Payment Dates</u>.**   During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**<u>Annual Installment</u>**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this note.

> **2.2**     **<u>Final Payment Date</u>**.    The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**<u>Maturity Date</u>**").

23.     Section 3 of the Note provides:

> **<u>Prepayment Allowed: Renegotiation Discretionary</u>**.    Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

24.     Section 4 of the Note provides:

> **<u>Acceleration Upon Default</u>**.    Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

6

HCMFA APP 0071

25. Section 6 of the Note provides:

> **Attorneys' Fees**. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**B.** **NPA's Default Under the Note**

26. NPA failed to make the payment due under the Note on December 31, 2020 in the amount of $1,406,111.92.

27. By letter dated January 7, 2021, the Debtor made demand on NPA for immediate payment under the Note (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit 2**. The Demand Letter provides:

> Because of Maker's failure to pay, the Note is in default. Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable. The amount due and payable on the Note as of January 8, 2021 is $24,471,804.98; however, interest continues to accrue under the Note.
>
> **The Note is in default, and payment is due immediately.**

Demand Letter (emphasis in the original).

28. On January 14, 2021, in an apparent attempt to cure its default, NPA paid the Debtor the $1,406,111.92 that was due on December 31, 2020 (the "Partial Payment").

29. The Note does not contain a cure provision. Therefore, the Partial Payment did not cure NPA's default. Accordingly, on January 15, 2021, the Debtor sent NPA a follow-up letter to its Demand Letter (the "Second Demand Letter"), a true and correct copy of which is attached hereto as **Exhibit 3**, stating:

> [T]he Partial Payment will be applied as payment against the amounts due under the Note in accordance with Section 3 thereof. **The Note remains in default, and all amounts due thereunder are due immediately**.

HCMFA APP 0072

> After adjusting for the Partial Payment and the continued accrual of interest, the amount due under the Note as of January 15, 2021, is $23,071,195.03 (which amount does not include expenses incurred to date in collecting the Note).

Second Demand Letter (emphasis in original).

30. Despite the Debtor's demands, NPA did not pay the amount demanded by the Debtor on January 7, 2021, or at any time thereafter.

31. As of January 15, 2021, the total outstanding principal and accrued but unpaid interest due under the Note was $23,071,195.03

32. Pursuant to Section 4 of the Note, the Note is in default, and is currently due and payable.

**C.** **The Debtor Files the Original Complaint**

33. On January 22, 2021, the Debtor filed the *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* [Docket No. 1] (the "Original Complaint"). In the Original Complaint, the Debtor brought claims for (i) breach of contract for NPA's breach of its obligations under the Note and (ii) turnover by NPA for the outstanding amounts under the Note, plus all accrued and unpaid interest until the date of payment plus the Debtor's costs of collection and reasonable attorney's fees.

**D.** **NPA's Affirmative Defenses**

34. On March 1, 2021, NPA filed *Defendant's Original Answer* [Docket No. 6] (the "Original Answer"). In its Original Answer, NPA asserted three affirmative defenses: (i) the claims are barred because the Plaintiff caused NPA to default, (ii) the claims are barred because the Plaintiff caused NPA to delay in making payment, and (iii) waiver and estoppel. *See id.* ¶¶39-41.

35. On June 9, 2021, NPA filed *Defendant's First Amended Answer* [Docket No. 35-3] (the "Amended Answer"), that asserted a new affirmative defense; namely, that the

8

Debtor previously agreed that it would not collect on the Notes "upon fulfillment of conditions subsequent" (*i.e.*, the Alleged Agreement) *id.* ¶42.

36.    According to NPA, the Alleged Agreement was orally entered into "sometime between December of the year each note was made and February of the following year."

37.    According to NPA, Mr. Dondero, acting on its behalf, entered into the Alleged Agreement with his sister, Nancy Dondero, acting as the Representative.

38.    Mr. Dondero controlled both NPA and the Debtor at the time he entered into the Alleged Agreement on behalf of NPA.

39.    Upon information and belief, the Debtor's books and records do not reflect the Alleged Agreement.

**E.    Dugaboy Lacked Authority to Act on Behalf of the Debtor**

40.    Under section 4.2 of the *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (the "Limited Partnership Agreement"), and attached hereto as **Exhibit 4**, Dugaboy was not authorized to enter into the Alleged Agreement on behalf of the Partnership, or otherwise bind the Partnership (as "Partnership" is defined in the Limited Partnership Agreement).

41.    Section 4.2(b) of the Limited Partnership Agreement states:

Management of Business.  No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically set forth in this Agreement.

**Exhibit 4**, § 4.2(b).

42.    No provision in the Limited Partnership Agreement authorizes any of the Partnership's limited partners to bind the Partnership.

HCMFA APP 0074

43.    Nancy Dondero also lacked authority to enter into the Alleged Agreement or to otherwise bind the Debtor

## FIRST CLAIM FOR RELIEF
### (Against NPA)

### (For Breach of Contract)

44.    The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

45.    The Note is a binding and enforceable contract.

46.    NPA breached the Note by failing to pay all amounts due to the Debtor upon NPA's default and acceleration.

47.    Pursuant to the Note, the Debtor is entitled to damages from NPA in an amount equal to (i) the aggregate outstanding principal due under the Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses), for NPA's breach of its obligations under the Note.

48.    As a direct and proximate cause of NPA's breach of the Note, the Debtor has suffered damages in the amount of at least $23,071,195.03, as of January 15, 2021, plus an amount equal to all accrued buy unpaid interest from that date, plus the Debtor's cost of collection.

## SECOND CLAIM FOR RELIEF
### (Against NPA)
### (Turnover by NPA Pursuant to 11 U.S.C. § 542(b))

49.    The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

50.    NPA owes the Debtor an amount equal to (i) the aggregate outstanding principal due under the Note, plus (ii) all accrued and unpaid interest thereon until the date of

HCMFA APP 0075

payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses), for NPA's breach of its obligations under the Note.

51. The Note is property of the Debtor's estate that is matured and payable upon default and acceleration.

52. NPA has not paid the amount due under the Note to the Debtor.

53. The Debtor has made demand for the turnover of the amount due under the Note.

54. As of the date of filing of this Complaint, NPA has not turned over the amount due under the Note.

55. The Debtor is entitled to the amount due under the Note.

### THIRD CLAIM FOR RELIEF
**(Against NPA)**
**(Avoidance and Recovery of Actual Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550)**

56. The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

57. The Debtor made the transfer pursuant to the Alleged Agreement within two years of the Petition Date.

58. Mr. Dondero entered into the Alleged Agreement on behalf of NPA with actual intent to hinder, delay, or defraud a present or future creditor, demonstrated by, *inter alia*:

(a) The transfer was made to, or for the benefit of, NPA, an insider of the Debtor.

(b) Mr. Dondero entered into the Alleged Agreement on behalf of NPA with his sister, Nancy Dondero.

(c) Mr. Dondero did not inform the Debtor's CFO or outside auditors about the Alleged Agreement.

HCMFA APP 0076

(d) The Debtor's books and record do not reflect the Alleged Agreement.

(e) The Alleged Agreement was not subject to negotiation.

(f) The value of the consideration received by the Debtor for the transfer was not reasonably equivalent in value.

59.    The pattern of conduct, series of transactions, and general chronology of events under inquiry in connection with the debt NPA incurred under the Note demonstrates a scheme of fraud.

60.    Pursuant to 11 U.S.C. § 550, the Debtor is entitled to recover for the benefit of the Debtor's estates the transfer made pursuant to the Alleged Agreement from NPA.

61.    Accordingly, the Debtor is entitled to a judgement: (i) avoiding the Alleged Agreement and the transfer made thereunder, and (ii) recovering from NPA an amount equal to all obligations remaining under the Note.

### FOURTH CLAIM FOR RELIEF
### (Against NPA)
### (Avoidance and Recovery of Actual Fraudulent Transfer Under 11 U.S.C. §§ 544(b) and 550, and Tex. Bus. & C. Code § 24.005(a)(1))

62.    The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

63.    The Debtor made the transfers pursuant to the Alleged Agreement after, or within a reasonable time before, creditors' claims arose.

64.    Mr. Dondero entered into the Alleged Agreement on behalf of NPA with actual intent to hinder, delay, or defraud a present or future creditor of the Debtor, demonstrated by, *inter alia*:

(g) The transfer was made to, or for the benefit of, NPA, an insider of the Debtor.

HCMFA APP 0077

(h) Mr. Dondero entered into the Alleged Agreement on behalf of NPA with his sister, Nancy Dondero.

(i) Mr. Dondero did not inform the Debtor's CFO or outside auditor's about the Alleged Agreement.

(j) Upon information and belief, the Debtor's books and record do not reflect the Alleged Agreement.

(k) The Alleged Agreement was not subject to negotiation.

(l) The value of the consideration received by the Debtor for the transfer was not reasonably equivalent in value.

65. Pursuant to 11 U.S.C. § 550, the Debtor is entitled to recover for the benefit of the Debtor's estates the transfers made in exchange for the Alleged Agreement from NPA.

66. Accordingly, the Debtor is entitled to a judgement: (i) avoiding the Alleged Agreement and the transfer made thereunder, and (ii) recovering from NPA an amount equal to all obligations remaining under the Notes.

### FIFTH CLAIM FOR RELIEF
**(Against Dugaboy and Ms. Dondero)**
**(For Declaratory Relief: -- 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7001)**

67. The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

68. A bona fide, actual, present dispute exists between the Debtor, on the one hand, and Dugaboy and Ms. Dondero on the other hand, concerning whether Dugaboy and/or Ms. Dondero, acting as the Representative, were authorized to enter into the Alleged Agreement on the Debtor's behalf.

13

HCMFA APP 0078

69.    A judgment declaring the parties' respective rights and obligations will resolve their dispute.

70.    Pursuant to Bankruptcy Rule 7001, the Debtor specifically seeks declarations that:

- (a) limited partners, including but not limited to Dugaboy, have no right or authority to take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically provided in the Limited Partnership Agreement,

- (b) neither Dugaboy nor Ms. Dondero (whether individually or as Representative) was authorized under the Limited Partnership Agreement to enter into the Alleged Agreement on behalf of the Partnership,

- (c) neither Dugaboy nor Ms. Dondero (whether individually or as Representative) otherwise had any right or authority to enter into the Alleged Agreement on behalf of the Partnership, and

- (d) the Alleged Agreement is null and void.

### SIXTH CLAIM FOR RELIEF
**(Against Dugaboy and Ms. Dondero)**
**(Breach of Fiduciary Duty)**

71.    The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

72.    If Dugaboy, as a limited partner, or Ms. Dondero, as Representative, had the authority to enter into the Alleged Agreement on behalf of the Debtor, then Dugaboy and/or Ms. Dondero would owe the Debtor a fiduciary duty.

14

73. If Dugaboy or Ms. Dondero (as Representative) had the authority to enter into the Alleged Agreement on behalf of the Debtor, then Dugaboy and/or Ms. Dondero breached their fiduciary duty of care to the Debtor by entering into and authorizing the purported Alleged Agreement on behalf of the Debtor.

74. Accordingly, the Debtor is entitled to recover from Dugaboy and Ms. Dondero (a) actual damages that the Debtor suffered as a result of their breach of fiduciary duty, and (b) for punitive and exemplary damages.

**SEVENTH CLAIM FOR RELIEF**
**(Against James Dondero and Nancy Dondero)**
**(Aiding and Abetting a Breach of Fiduciary Duty)**

75. The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

76. James Dondero and Nancy Dondero (together, the "Donderos") were aware that Dugaboy would have fiduciary duties to the Debtor if it acted to bind the Debtor.

77. The Donderos aided and abetted Dugaboy's breach of its fiduciary duties to the Debtor by knowingly participating in the authorization of the purported Alleged Agreement.

78. The Donderos aided and abetted Dugaboy's breach of its fiduciary duty to the Debtor by knowingly participating in the authorization of the purported Alleged Agreement.

79. Accordingly, the Donderos are jointly and severally liable (a) for the actual damages that the Debtor suffered as a result of aiding and abetting Dondero's breaches of fiduciary duties, and (b) for punitive and exemplary damages

WHEREFORE, the Debtor prays for judgment as follows:

(i) On its First Claim for Relief, damages in an amount to be determined at trial but includes (a) the outstanding principal due under the Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to

15

HCMFA APP 0080

the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)    On its Second Claim for Relief, ordering turnover by NPA to the Debtor of an amount equal to (a) the outstanding principal due under the Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses);

(iii)    On its Third Claim for Relief, avoidance of the Alleged Agreement and the transfers thereunder pursuant to the Alleged Agreement arising from actual fraudulent transfer under section 548 of the Bankruptcy Code;

(iv)    On its Fourth Claim for Relief, avoidance of the Alleged Agreement and the transfers thereunder pursuant to the Alleged Agreement of funds arising from actual fraudulent transfer under Tex. Bus. & C. Code § 24.005(a)(1);

(v)    On its Fifth Claim for Relief, a declaration that: (a) limited partners, including but not limited to Dugaboy, have no right or authority to take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically provided in the Limited Partnership Agreement, (b) neither Dugaboy nor Ms. Dondero (whether individually or as Representative) was authorized under the Limited Partnership Agreement to enter into the Alleged Agreement on behalf of the Partnership, (c) neither Dugaboy nor Ms. Dondero (whether individually or as Representative) otherwise had any right or authority to enter into the Alleged

HCMFA APP 0081

Agreement on behalf of the Partnership, and (d) the Alleged Agreement is null and void;

(vi)    On its Sixth Claim for Relief, actual damages from Dugaboy and Ms. Dondero, in an amount to be determined at trial, that Debtor suffered as a result of their breach of fiduciary duty, and for punitive and exemplary damages;

(vii)    On its Seventh Claim for Relief, actual damages from the Donderos, jointly and severally, in an amount to be determined at trial, that Debtor suffered as a result of aiding and abetting Dugaboy's breaches of fiduciary duty, and for punitive and exemplary damages and

(iii)    Such other and further relief as this Court deems just and proper.

17

HCMFA APP 0082

Dated: As of July 13, 2021                PACHULSKI STANG ZIEHL & JONES LLP
                                          Jeffrey N. Pomerantz (CA Bar No.143717)
                                          Ira D. Kharasch (CA Bar No. 109084)
                                          John A. Morris (NY Bar No. 2405397)
                                          Gregory V. Demo (NY Bar No. 5371992)
                                          Hayley R. Winograd (NY Bar No. 5612569)
                                          10100 Santa Monica Blvd., 13th Floor
                                          Los Angeles, CA 90067
                                          Telephone: (310) 277-6910
                                          Facsimile: (310) 201-0760
                                          E-mail:     jpomerantz@pszjlaw.com
                                                      ikharasch@pszjlaw.com
                                                      jmorris@pszjlaw.com
                                                      gdemo@pszjlaw.com
                                                      hwinograd@pszjlaw.com

                                          -and-

                                          */s/ Zachery Z. Annable*
                                          HAYWARD PLLC
                                          Melissa S. Hayward
                                          Texas Bar No. 24044908
                                          MHayward@HaywardFirm.com
                                          Zachery Z. Annable
                                          Texas Bar No. 24053075
                                          ZAnnable@HaywardFirm.com
                                          10501 N. Central Expy, Ste. 106
                                          Dallas, Texas 75231
                                          Tel: (972) 755-7100
                                          Fax: (972) 755-7110

                                          *Counsel for Highland Capital Management, L.P.*

HCMFA APP 0083

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

*Counsel for Defendant NexPoint Advisors, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03005-sgj |
| NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT NEXPOINT ADVISORS, L.P.'S
ANSWER TO AMENDED COMPLAINT**

Defendant NexPoint Advisors, L.P. ("NexPoint"), a defendant in the above-styled and numbered adversary proceeding (the "Adversary Proceeding") filed by Highland Capital Management, L.P. (the "Plaintiff"), hereby files this Answer (the "Answer") responding to the *Amended Complaint for (I) Breach of Contract and (II) Turnover of Property (III) Fraudulent Transfer, and (IV) Breach of Fiduciary Duty* [Adv. Dkt. 73] (the "Amended Complaint"). Where an allegation in the Amended Complaint is not expressly admitted in this Answer, it is denied.

## PRELIMINARY STATEMENT

1.  The first sentence of paragraph 1 of the Amended Complaint sets forth the Plaintiff's objective in bringing the Amended Complaint and does not require a response. To the extent it contains factual allegations, they are denied. The second sentence contains a legal conclusion that does not require a response. To the extent it contains factual allegations, they are denied.

2.  Defendant NexPoint admits that NPA's First Amended Answer speaks for itself. To the extent paragraph 2 contradicts the First Amended Answer, it is denied.

3.  Defendant NexPoint denies the allegations in paragraph 3 of the Amended Complaint.

4.  Paragraph 4 of the Amended Complaint sets forth the Plaintiff's objective in bringing the Amended Complaint and does not require a response. To the extent it contains factual allegations, they are denied.

5.  Paragraph 5 of the Amended Complaint contains a summary of the relief the Plaintiff seeks and does not require a response. To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

6.  Defendant NexPoint admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional authority on the Bankruptcy Court to adjudicate this dispute. Any allegations in paragraph 6 not expressly admitted are denied.

7.  Defendant NexPoint admits that the Court has statutory (but not Constitutional) jurisdiction to hear this Adversary Proceeding. Any allegations in paragraph 7 not expressly admitted are denied.

8.      Defendant NexPoint denies the allegations contained in paragraph 8 of the Amended Complaint.  Defendant NexPoint does not consent to any trial before, or final order entered by, the Bankruptcy Court.  Defendant NexPoint demands a trial by jury of all issues so triable.

9.      Defendant NexPoint admits the allegations in paragraph 9 of the Amended Complaint.

## THE PARTIES

10.      Defendant NexPoint admits the allegations in paragraph 10 of the Amended Complaint.

11.      Defendant NexPoint admits the allegations in paragraph 11 of the Amended Complaint.

12.      Defendant NexPoint admits the allegations in paragraph 12 of the Amended Complaint.

13.      Defendant NexPoint lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 of the Amended Complaint and therefore denies the same.

14.      Defendant NexPoint lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14 of the Amended Complaint and therefore denies the same.

## CASE BACKGROUND

15.      Defendant NexPoint admits the allegations in paragraph 15 of the Amended Complaint.

16.      Defendant NexPoint admits the allegations in paragraph 16 of the Amended Complaint.

17.     Defendant NexPoint admits the allegations in paragraph 17 of the Amended Complaint.

18.     Defendant NexPoint admits the allegations in paragraph 18 of the Amended Complaint.

19.     Defendant NexPoint admits the allegations in paragraph 19 of the Amended Complaint.

## STATEMENT OF FACTS

20.     Defendant NexPoint admits that it has executed at least one promissory note under which the Debtor is a payee.  Any allegations in paragraph 20 note expressly admitted are denied.

21.     Defendant NexPoint admits the allegations in paragraph 21 of the Amended Complaint.

22.     Defendant NexPoint denies paragraph 22 of the Complaint.  The document speaks for itself and the quote set forth in paragraph 22 is not verbatim.

23.     Defendant NexPoint admits the allegations in paragraph 23 of the Amended Complaint.

24.     Defendant NexPoint denies paragraph 24 of the Complaint.  The document speaks for itself and the quote set forth in paragraph 24 is not verbatim.

25.     Defendant NexPoint admits the allegations in paragraph 25 of the Amended Complaint.

26.     Defendant NexPoint admits that it did not make a payment under the Note on December 31, 2020. Defendant NexPoint denies that any payment was due under the Note on December 31, 2020.  To the extent not expressly admitted, paragraph 26 of the Amended Complaint is denied.

27.    Defendant NexPoint admits that Exhibit 2 to the Amended Complaint (the "Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself.  To the extent paragraph 27 of the Amended Complaint asserts a legal conclusion, no response is required, and it is denied.  To the extent not expressly admitted, paragraph 27 of the Amended Complaint is denied.

28.    Defendant NexPoint admits that it paid the Debtor $1,406,111.92 on January 14, 2021, but denies that any payment was due on December 31, 2020 or that this was an attempt to cure a default.  To the extent not expressly admitted, paragraph 28 of the Amended Complaint is denied.

29.    Defendant NexPoint admits that Exhibit 3 to the Amended Complaint (the "Second Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself.  To the extent paragraph 29 of the Amended Complaint asserts a legal conclusion, no response is required, and it is denied.  To the extent not expressly admitted, paragraph 29 of the Amended Complaint is denied.

30.    To the extent paragraph 30 of the Amended Complaint asserts a legal conclusion, no response is necessary, and it is denied.  The Defendant otherwise admits paragraph 30 of the Amended Complaint.

31.    Defendant NexPoint lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 of the Amended Complaint and therefore denies the same.

32.    Defendant NexPoint denies the allegations in paragraph 32 of the Amended Complaint.

33.    Defendant NexPoint admits that the Debtor filed the Original Complaint in this action on January 22, 2021, as alleged in the first sentence of paragraph 33 of the Amended

Complaint. Defendant NexPoint denies it is liable for the relief requested in the Original Complaint. To the extent not expressly admitted, paragraph 33 of the Amended Complaint is denied.

34.     Defendant NexPoint admits the allegations in paragraph 34 of the Amended Complaint.

35.     Defendant NexPoint admits the allegations in paragraph 35 of the Amended Complaint.

36.     Defendant NexPoint admits that NexPoint's First Amended Answer speaks for itself.  To the extent paragraph 36 contradicts the First Amended Answer, it is denied.

37.     Defendant NexPoint admits that NexPoint's First Amended Answer speaks for itself.  To the extent paragraph 37 contradicts the First Amended Answer, it is denied.

38.     Paragraph 38 of the Amended Complaint asserts a legal conclusion to which no answer is required.  To the extent of any factual allegation, Defendant NexPoint admits that Mr. Dondero controlled NPA and denies that he controlled the Debtor at the time of the Alleged Agreement.

39.     Defendant NexPoint lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of the Amended Complaint and therefore denies the same.

40.     Defendant NexPoint denies the allegations in paragraph 40 of the Amended Complaint.

41.     Defendant NexPoint admits that Exhibit 4 to the Amended Complaint is a true and correct copy of what it purports to be and that the document speaks for itself.  To the extent paragraph 41 of the Amended Complaint asserts a legal conclusion, no response is required, and

it is denied. To the extent not expressly admitted, paragraph 41 of the Amended Complaint is denied.

42. Paragraph 42 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.

43. Paragraph 43 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.

**FIRST CLAIM FOR RELIEF**
**(against NexPoint)**
**(for Breach of Contract)**

44. Paragraph 44 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

45. Paragraph 45 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied. To the extent of any factual allegation, it is denied.

46. Paragraph 46 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied. To the extent of any factual allegation, it is denied.

47. Paragraph 47 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied. To the extent of any factual allegation, it is denied.

48. Paragraph 48 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied. To the extent of any factual allegation, it is denied.

**SECOND CLAIM FOR RELIEF**
**(against NexPoint)**
**(Turnover by NexPoint Pursuant to 11 U.S.C. § 542(b))**

49. Paragraph 49 of the Amended Complaint is a sentence of incorporation that does not require a response and is therefore denied. All prior responses are incorporated herein by reference.

50.    Paragraph 50 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

51.    Paragraph 51 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

52.    Paragraph 52 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

53.    Paragraph 53 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  Defendant NexPoint admits that the Plaintiff transmitted the Demand Letter and the Second Demand Letter, and those documents speak for themselves.

54.    Paragraph 54 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

55.    Paragraph 55 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

### THIRD CLAIM FOR RELIEF
**(Against NexPoint)**
**(Avoidance and Recovery of Actual Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) and 550)**

56.    Paragraph 56 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

57.    Paragraph 57 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.

58.    Paragraph 58 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

59.     Paragraph 59 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

60.     Paragraph 60 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

61.     Paragraph 61 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

## FOURTH CLAIM FOR RELIEF
### (Against NexPoint)
### (Avoidance and Recovery of Actual Fraudulent Transfer Under 11 U.S.C. § 544(b) and 550, and Tex. Bus. & C. Code § 24.005(a)(1))

62.     Paragraph 62 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

63.     Paragraph 63 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.

64.     Paragraph 64 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

65.     Paragraph 65 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

66.     Paragraph 66 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.  To the extent of any factual allegation, it is denied.

## FIFTH CLAIM FOR RELIEF
### (Against Dugaboy Investment Trust and Nancy Dondero)
### (For Declaratory Relief: -- 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7001)

67.     Paragraph 67 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

68.     This claim is only asserted against Defendants Dugaboy Investment Trust and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

69.     This claim is only asserted against Defendants Dugaboy Investment Trust and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

70.     Paragraph 70 of the Amended Complaint states a legal conclusion that does not require a response and is therefore denied.

## SIXTH CLAIM FOR RELIEF
### (Against Dugaboy Investment Trust and Nancy Dondero)
### (Breach of Fiduciary Duty)

71.     Paragraph 71 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

72.      This claim is only asserted against Defendants Dugaboy Investment Trust and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

73.     This claim is only asserted against Defendants Dugaboy Investment Trust and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

74.      This claim is only asserted against Defendants Dugaboy Investment Trust and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

## SEVENTH CLAIM FOR RELIEF
### (Against James Dondero and Nancy Dondero)
### (Aiding and Abetting a Breach of Fiduciary Duty)

75.     Paragraph 75 of the Amended Complaint is a sentence of incorporation that does not require a response. All prior responses are incorporated herein by reference.

76.     This claim is only asserted against Defendants James Dondero and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

77.     This claim is only asserted against Defendants James Dondero and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

78.     This claim is only asserted against Defendants James Dondero and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

79.     This claim is only asserted against Defendants James Dondero and Nancy Dondero.  Therefore, Defendant NexPoint is not required to respond to this claim.

Defendant NexPoint denies that the Plaintiff is entitled to the relief requested in the prayer, including as to parts (i), (ii), (iii), (iv), (v), (vi), (vii) and (iii) [sic].

## AFFIRMATIVE DEFENSES

80.     Pursuant to that certain Shared Services Agreement, the Plaintiff was responsible for making payments on behalf of the Defendant under the note.  Any alleged default under the note was the result of the Plaintiff's own negligence, misconduct, breach of contract, etc.

81.     Delay in the performance of a contract is excused when the party who seeks to enforce the contract caused the delay.  It was therefore inappropriate for the Plaintiff to accelerate the note when the brief delay in payment was the Plaintiff's own fault.

82.     Furthermore, the Plaintiff has waived the right to accelerate the note and /or the Plaintiff is estopped to enforce the alleged acceleration by accepting payment after the same.

83.     Furthermore, the Plaintiff's claims are barred in whole or in part because, prior to any alleged breach or acceleration, the Plaintiff agreed that it would not collect on the note upon fulfilment of certain conditions subsequent. Specifically, sometime between December of the year in which each Note was made and February of the following year, Defendant Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of Defendant James Dondero's control. This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant NexPoint believes there may be testimony or email correspondence that discusses the

existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

84.     Defendant NexPoint asserts that any fraudulent transfer claim is barred because NexPoint acted in good faith, without knowledge of any alleged avoidability, and because reasonably equivalent value was provided for any alleged transfer or obligation.

85.     Defendant NexPoint asserts that any fraudulent transfer claim is barred because no transferor or transferee, or obligor or obligee, was insolvent.

86.     To the extent of any avoidance, NexPoint asserts a lien under 11 U.S.C. § 548(c) to the extent that NexPoint gave value, and a similar preference lien under any applicable provision of the Texas Uniform Fraudulent Transfer Act.

## JURY DEMAND

87.     Defendant NexPoint demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

88.     Defendant NexPoint does not consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant NexPoint respectfully requests that, following a trial on the merits, the Court enter a judgment that the Plaintiff take nothing on the Amended Complaint and provide Defendant NexPoint such other relief to which it is entitled.

RESPECTFULLY SUBMITTED this 1st day of September, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
_____
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com

**COUNSEL FOR NEXPOINT ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned hereby certifies that, on September 1, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

/s/ Davor Rukavina
_____
Davor Rukavina

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Civil Proceeding No. |
| | § | |
| vs. | § | 3:21-cv-01010-E |
| | § | |
| JAMES DONDERO, NANCY DONDERO, AND | § | |
| THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF DAVOR RUKAVINA

The undersigned, Davor Rukavina, hereby declares under penalty of perjury pursuant to the laws of the United States of America the following:

1.      My name is Davor Rukavina.  I am over the age of 21, have never been convicted of a felony, and am otherwise competent to give this Declaration.  The statements made herein are made based on my personal knowledge.

2.      I am an attorney licensed to practice law in the State of Texas and before this Court. I am lead counsel for Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NexPoint") in suits commenced by Highland Capital Management, L.P. ("Highland") against HCMFA and NexPoint seeking to recover on promissory notes.

3.      I am executing this Declaration with respect to the *Appendix of Non-Party Highland Capital Management Fund Advisors, L.P. In Opposition to Plaintiff's Motion to Consolidate Note Cases* (the "Appendix").

---

HCMFA APP 0097

4.      Included in the Appendix at Tab 1 is a true and correct copy of the *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate*, as filed in the case referenced therein and as the live pleading.

5.      Included in the Appendix at Tab 2 is a true and correct copy of the *Defendant's Original Answer*, as filed in the case referenced therein.

6.      Included in the Appendix at Tab 3 is a true and correct copy of the *Defendant's Amended Answer*, as filed in the case referenced therein and as the live pleading.

7.      Included in the Appendix at Tab 4 is a true and correct copy of the *Order*, as filed in the case referenced therein.

8.      Included in the Appendix at Tab 5 is a true and correct copy of the *Defendant's Second Motion for Leave to Amend Answer and Brief In Support Thereof*, as filed in the case referenced therein, and which has not been adjudicated yet.

9.      Included in the Appendix at Tab 6 is a true and correct copy of the *Amended Complaint for (i) Breach of Contract, (ii) Turnover of Property; (iii) Fraudulent Transfer, and (iv) Breach of Fiduciary Duty*, as filed in the case referenced therein and as the live pleading.

10.     Included in the Appendix at Tab 7 is a true and correct copy of the *Defendant NexPoint Advisors, L.P.'s Answer to Amended Complaint*, as filed in the case referenced therein and as the live pleading.

11.     I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and ability.

Dated: December 16, 2021.

_____
DAVOR RUKAVINA